CROFT v. JENSEN et al. (WEST et al., Interveners).

No. 4565.   Decided January 12, 1935.   (40 P. [2d] 198.)

14

*R. B. Thurman,* of Salt Lake City, for appellant.

*Hurd & Hurd,* of Salt Lake City, and M. B. Pope, of Provo, for respondent.

ELIAS HANSEN, Justice.

Heretofore an opinion has been written in this cause and by a divided court the judgment appealed from affirmed. Thereafter a rehearing was granted, and the cause reargued. Plaintiff brought this action against the defendants, A. M. Jensen and I. G. Bench, for the cancellation of a contract for the sale of a parcel of land situated in Salt Lake City and county, Utah; for the restitution of the property covered

by a contract of sale; and for damages for the wrongful detention thereof by the defendants. By the contract of sale sued upon, the plaintiff agreed to sell the property therein described to the defendant A. M. Jensen. The ground upon which plaintiff claimed the right to declare a forfeiture of the contract of sale was that defendants were in default in the payment of two installments of $50 each. To the complaint the defendants filed separate answers in which each denied the default. Defendant Bench further alleged in his answer that he is the assignee of the rights of defendant Jensen in and to the contract of sale; that prior to the bringing of this action he tendered to the plaintiff the full amount remaining unpaid on the contract, and that he tendered such amount into court for the use of the plaintiff.

After the issues were thus drawn and before trial the interveners, David W. West and May H. West, asked for and were granted leave to intervene in the cause. They filed a complaint in intervention in which two causes of action are alleged against the defendants, Jensen and Bench. It is alleged in the first cause of action that plaintiff has assigned to the interveners her cause of action and has conveyed to them by warranty deed the property covered by the contract of sale. The other allegations of interveners' first cause of action are substantially the same as are contained in plaintiff's complaint. It is, in substance, alleged in interveners' second cause of action that prior to the transaction complained of interveners were the owners of a parcel of land in Cache county, Utah; that they engaged the defendant A. M. Jensen as their agent to sell or trade such tract of land; that A. M. Jensen, while acting as their agent, fraudulently entered into a contract with the plaintiff for the purchase of the Salt Lake City property; that such fraud consisted of Jensen making the contract for his own use and benefit instead of for the use and benefit of the interveners; that the consideration paid on the purchase price of the Salt Lake City property was the Cache county property of the interveners; that Jensen had wrongfully gone into and retained

possession of the Salt Lake City property of interveners to their damage in the sum of $500. Defendants filed separate answers. The answers to the first cause of action set out in the complaint in intervention are substantially the same as the answers to the complaint. As to the second cause of action, each of the defendants alleged that defendant purchased the Cache county property from the interveners for the sum of $1,500; that such sum was paid to interveners by giving them credit on a note which they owed to the wife of the defendant Jensen. Each of the defendants denied that any fraud was practiced upon interveners, and also denied that they were damaged. While there are other pleadings filed in the cause, such as demurrers, notices to strike, and replies, it was upon the issues raised by the complaint in intervention and the answer thereto that a trial was had to the court sitting without a jury. It will be observed that, upon the filing of the complaint in intervention, the interveners in effect became the plaintiffs in the cause. The findings of fact, conclusions of law, and judgment made in the cause are in favor of the interveners and against the defendants. By the judgment the interveners are awarded the Salt Lake City property and are given a money judgment against the defendants for the sum of $260 and costs. Defendants appeal. Their assignment of errors is directed primarily against the sufficiency of the evidence to support the findings and judgment. It thus becomes necessary to review the evidence.

The following facts are established by the undisputed evidence: On March 14, 1925, the plaintiff, Minnie Croft, and the defendant A. M. Jensen entered into a written contract whereby plaintiff agreed to sell, and Jensen agreed to buy, a house and lot located at 1436 Lincoln street, Salt Lake City, Utah. The agreed price was $6,500. At the time the contract of sale and purchase was entered into, the sum of $4,200 was paid to plaintiff. Jensen paid $200 by check. Intervener West conveyed to plaintiff a parcel of land upon which was a building used for conducting a motion picture

theater, together with the equipment therein, for the agreed price of $4,000. The land so conveyed to plaintiff is located in Lewiston, Cache county, Utah. By the terms of the deed of conveyance plaintiff assumed and agreed to pay a mortgage in the sum of $650 on the Lewiston property. The contract between plaintiff and Jensen for the sale and purchase of the Lincoln street property contains the following provisions:

"Said buyer hereby agrees to pay for said described premises the sum of Sixty-five Hundred and No/100 dollars, payable at 306 East 5th South in Salt Lake City, Utah, strictly within the following times, to wit: Forty-Two-Hundred dollars cash, the receipt of which is hereby acknowledged. And fifty-dollars or more on or before the 12th day of April, 1925, fifty-dollars or more on or before the 12th day of May, and fifty-dollars or more on or before the 12th day of each and every month until the total sum of forty-five hundred dollars shall have been paid; Said monthly payments to be applied first to the payment of interest and second to the reduction of the principal. Interest shall be charged on all unpaid portions of the purchase price at the rate of Eight per cent per annum, payable monthly.

"It is understood and agreed that if the seller accepts payments from the buyer on this contract other than according to the terms herein mentioned, then by so doing, it will in no way alter the terms of the contract as to forfeiture hereinafter mentioned.

"The seller is hereby given the option to execute and maintain a loan secured by mortgage upon said property of not to exceed $2000.00, bearing interest at the rate of not to exceed 7 per cent. When the principal has been reduced to the amount of the loan and mortgage, the seller agrees to convey and the buyer agrees to accept title to the above described property subject to said loan and mortgage.

"The buyer agrees upon written request from the seller to make application to a reliable Building and Loan Society for a loan of such amount that can be procured under the regulations of the said society; and hereby agrees to apply any amount so received on the purchase price herein and that he will execute the papers required and pay the expenses necessary to obtain the said loan.

"In the event the buyer shall default in the payment of any special or general taxes, assessments or insurance premiums as hereinbefore provided for, and in the event the seller shall, as he may at his option, pay said taxes assessments, or insurance premiums, or either of them, then the buyer agrees to repay the seller upon demand all such sums so advanced and paid by him together with interest there-

on from date of payment of the said sums at the rate of one per cent per month until paid and same shall be secured by this contract.

"In the event of a failure to comply with the terms hereof by the buyer or upon failure to make any payment when the same shall become due, or within Thirty days thereafter, the seller shall be released from all obligations in law and equity to convey said property, and the said buyer shall forfeit as liquidated damages all payments which have been made theretofore on this contract, and the buyer agrees that the seller may at his option re-enter and take possession of said premises without legal process as in its first and former estate, together with all improvements and additions made by the buyer thereon, and the said additions and improvements shall remain with the land and become the property of the seller, the buyer becoming at once a tenant at will of the seller. It is agreed that time is of the essence of this agreement.

"When the entire purchase price has been paid and all terms and conditions have been complied with, seller agrees to convey said premises to buyer by a Warranty Deed, free of encumbrances except as above mentioned and except as may be caused by or through the buyer and to deliver abstract of title to date."

At the time the contract between plaintiff and Jensen was entered into there was a mortgage in the sum of $2,000 on the Lincoln street property. That mortgage had not been paid at the time of the trial of this action. Defendant Jensen and his family took possession of the Lincoln street property on or about May 1, 1925. They continued to occupy such property as their home until this action was tried. On April 10, 1925, Jensen assigned his contract with plaintiff to defendant I. G. Bench, who, according to his testimony, agreed to pay, and at the time of the trial had paid, Jensen $1,100 in cash and 12,500 shares of the capital stock of the Armistead Metal Separator Company, a corporation, of the approximate value of $650. In addition to such payment, Bench agreed to assume and pay the mortgage of $2,000 against the property. Bench also agreed to pay plaintiff the sum of $300 which was unpaid on the purchase price of the Lincoln street property. It was also agreed that Jensen should retain the property up to September 1, 1925, without the payment of any rent. On April 10, 1925,

Bench wrote a letter to plaintiff informing her that her contract for the sale of the Lincoln street property had been assigned to him. Bench paid plaintiff two $50 installments on her contract with Jensen. It is further made to appear that on July 9, 1925, Jensen wrote Bench a letter wherein Jensen stated, in substance, that Thomas Croft, the husband of the plaintiff, was owing him (Jensen) $250; that Croft had agreed to accept the $250 credit in full payment of the $200 which was still due and unpaid upon the contract for the purchase of the Lincoln street property; that Mrs. Croft would execute a deed to the property and mail the same to Bench in the course of a few days. Jensen further requested Bench to send a receipt showing that he (Jensen) had paid the rent on the property for five months. Under date of July 15, 1925, Bench sent Jensen the requested receipt. On July 17, 1925, the plaintiff served a written notice on the defendant Jensen personally informing him that plaintiff had terminated her contract for the sale of the Lincoln street property. The notice also requested Jensen to vacate the property. On the same day a similar notice was sent by registered mail to the defendant Bench. Within a few days after Bench received the notice, he tendered to the plaintiff and to her attorney the sum of $200 and demanded a deed to the property. The tender of $200 was not accepted, and plaintiff refused to convey the property. On July 31, 1925, plaintiff brought this action against the defendants by filing a complaint in the district court of Salt Lake county. On August 20, 1925, plaintiff assigned to interveners her alleged cause of action against defendants. On the same date she conveyed to the Wests the Lincoln street property. The Wests paid plaintiff the sum of $448.70 for the assignment and conveyance. The amount so paid was to reimburse the plaintiff for her trouble and expense in bringing her action against the defendants and to pay her the $200 which was still owing her upon the contract for the sale of the property. The defendants again tendered payment to the interveners at the trial of the sum of $200 for a deed to the property. Inter-

veners refused to accept the money and also refused to convey the property to Bench. The foregoing is a brief summary of the evidence touching interveners' first cause of action. Thus, the question to be determined with respect to interveners' first cause of action is whether or not upon these facts the plaintiff and her assignees, as interveners, are entitled to declare a forfeiture of the contract for the sale of the Lincoln street property. It will be observed that, at the time plaintiff attempted to declare a forfeiture, she had been paid the whole of the purchase price of the property except $200, which sum was tendered to her and was by her refused prior to the time she commenced this action. It is an elementary principle of law that a provision in a contract between private individuals for a penalty in case of breach of such contract is void. 4 Page on Contracts (2d Ed.) § 2118, p. 3673; 17 C. J. § 232, p. 932; *Dopp* v. *Richards,* 43 Utah 332, 135 P. 98; *Western Macaroni Mfg. Co.* v. *Fiore,* 47 Utah 108, 151 P. 984. A different rule appears when the parties to a contract intend to and do agree upon what shall be liquidated damages in case of a breach of contract. However, the use of the term "penalty" or "liquidated damages" by the parties to a contract is not controlling in the construction thereof. 4 Page on Contracts (2d Ed.) § 2120, p. 3677, and cases cited in the footnote to the text. Whether the provision in the contract is to be construed as an agreement for liquidated damages or for a penalty must be determined by a consideration of the circumstances surrounding the parties at the time of its execution. 17 C. J., § 233, pp. 434-5. When a contract contains a provision for forfeiture, if money is not paid when due, such provision is quite generally held to be a penalty and not an agreement for liquidated damages. In 17 C. J. § 252, p. 954, the law is thus stated:

"Although there is some authority to the contrary, the ordinary rules as to liquidated damages may be said to be inapplicable to contracts for the payment of money only. In such cases the courts construe the damages as a penalty, irrespective of the intent of the parties or the language by which it is expressed. The principle is that damages for the breach of contracts for the payment of money

are fixed and liquidated, by law, and neither require nor are susceptible of liquidation by the parties, interest being the legal measure of damages in all such cases."

Tested by the foregoing principles of law there is no escape from the conclusion that the plaintiff was not entitled to declare a forfeiture of the contract involved in this action. The limit and measure of her right to recover because the installments were not paid when the same became due was the amount of the installments together with legal interest thereon. To permit plaintiff to retain $6,300 as liquidated damages because she was not promptly paid two installments when there was only $200 remaining unpaid on the contract is not in accord with equity and good conscience, but is clearly unconscionable. There is no merit to plaintiff's claim that she had a right to declare a forfeiture of the contract for the sale of the Lincoln street property. If the plaintiff had no right to declare such forfeiture, obviously she could not and did not confer upon the interveners any such right by assigning to them her cause of action.

The evidence touching interveners' second cause of action is in many respects in direct conflict. At the trial, defendant Jensen testified that he purchased the Lewiston property from West; that he and his wife agreed to give interveners credit of $1,500 on a promissory note which the interveners owed to Jensen's wife. The testimony of Mrs. Jensen is to the same effect. Defendant I. G. Bench, Alton D. Steele, and George H. Budd each testified to the effect that, after the contract of sale was entered into between Jensen and Mrs. Croft, the intervener Mr. West stated that he had received from the Jensens a credit of $1,500 on the $7,000 note which he owed to Mrs. Jensen. The testimony of Mr. Budd in that respect is very convincing. He had no interest in this litigation, and, according to his testimony, was about to purchase the $7,000 note and went to the intervener Mr. West, and asked him if the $1,500 was the only credit he claimed on the note; that at that time Mr. West

informed him that the $1,500 credit was given to him as the purchase price of the Lewiston property. Mr. West admitted most of the conversation so testified to. He admitted that he did not inform Mr. Budd that he was not entitled to such credit, but he denied that he stated the credit was for the purchase price of the Lewiston property. The testimony of J. E. Fisher, who drew up the contract of sale between plaintiff and Mr. Jensen and the deed whereby the Wests conveyed the Lewiston property to Mrs. Croft, is to the effect that, when such documents were being prepared, the Wests stated that Jensen was to have the Lincoln street property. There is also evidence that Mrs. West examined the contract for the sale of that property, and that she saw the defendant Jensen pay $200 on that contract. On about May 1st, after the contract was entered into, the Jensens moved into the home on the Lincoln street property, and remained there until the trial of this cause. The Wests made no attempt to gain possession of the property until they intervened in this action. During the time the Jensens were living in the home on the Lincoln street property, the Wests visited them a number of times, yet, so far as appears, made no objections to their remaining in possession of the property, nor did they demand the possession thereof. On the other hand, the testimony of the Wests is to the effect that they were to have the Lincoln street property, and that they never agreed to accept a credit of $1,500 on their note as payment on that property. The testimony of Stanley Brown and his wife, Lillie Brown, who were or had been employees of the Wests, is to the effect that, after the contract for the sale of the property was entered into, the defendant Jensen and his wife stated to them that the Lincoln street property belonged to the Wests. Mr. West further testified that upon a number of occasions he requested defendant Jensen to get him his contract for the purchase of the property, but that Jensen put him off by saying that he would attend to the matter as soon as he got around to it. Independent of the direct testimony, there are a number of circumstances which cast doubts on the

version which the Wests give to the transaction here involved. Mr. West apparently was a man of considerable business experience. It is made to appear that at the time of the transaction in question he was conducting two picture show houses. It is also made to appear that he had a number of other interests which he was managing. No attempt was made by the interveners to explain why they transferred the Lewiston property to Mrs. Croft without getting a contract from her covering the Lincoln street property. They apparently knew that $200 in cash was to be the down payment to Mrs. Croft, and that from time to time other payments were to be made, yet, according to their own testimony, they did not concern themselves over such matters. This being a suit in equity, we are required to pass upon the weight of the evidence. In doubtful cases, the findings of the trial court should not be disturbed, because it hears the evidence which we but read, and it has the opportunity of observing the witnesses, their apparent frankness and candor or the lack thereof, and hence is in a better position than are we as a reviewing court to pass upon the weight that should be given the evidence. However, after a careful examination of the evidence which is brought here for review, we are of the opinion that the clear preponderance thereof shows that the interveners agreed to accept a credit of $1,500 on their note in favor of Mrs. Jensen in payment of their equity in the Lewiston property. If we are mistaken as to that, still the judgment should be reversed, and a new trial ordered for other reasons. The interveners allege, and their evidence tends to show, that Jensen was interveners' agent at the time he purchased, as well as at the time he was in possession of the Lincoln street property. Jensen, not only took, but he retained, possession of the property with the consent and acquiescence of the interveners. The evidence shows that the Wests visited the Jensens a number of times while the Jensens remained in the home upon the property involved in this proceeding. So far as appears, interveners never at any time demanded that Jensens deliver up possession of the property or made any

objection to Jensen's possession thereof until they filed their complaint in intervention in this cause. Defendant Bench received no benefit whatsoever by reason of the Jensens occupying the Lincoln street property, and, so far as appears, never knew that the interveners claimed any right in the property until they intervened in this action. The defendant Bench did claim an interest in the property by reason of an assignment of the contract to him by Jensen. Such claim cannot be said to constitute a basis for a money judgment against Bench for the rental value of the Lincoln street property. Upon this record, the judgment against Bench for the rental value of such property is without support in the pleadings, in the findings, or in the evidence. The trial court found that:

"* * * Said defendant Bench at and prior to the time of taking the said assignment of said contract or bond for deed from said defendant Jensen * * * knew, or had the means of knowledge, and was chargeable with notice that said defendant Jensen had taken and then held the same, as agent for said David W. West, and was by reason of said facts in law a trustee for him, and that whatever, if any, interest in said property was by said contract or bond for deed agreed to be conveyed to him, the said Jensen, was taken and held by him as agent or trustee for the intervener, David W. West; that said defendant Bench acquired no rights under said contract or bond for deed, or title thereto, or interest in said property by reason of said assignment of said contract or bond for deed to him by said defendant Jensen.

"That defendant Bench is not a bona fide purchaser for value or without notice of said described Lincoln Street property, and that the consideration paid by him to said Jensen for the assignment to him of the said agreement or bond for deed was and is grossly insufficient and inadequate."

The foregoing findings may well be open to the objection that they constitute mere conclusions. Be that as it may, there are objections to these findings which lie deeper than merely their form. There is no evidence whatsoever that supports the finding that Bench at or prior to the taking of the assignment of the contract from Jensen knew, or had any means of knowing, that the Wests

claimed any interest in the Lincoln street property, or that Jensen held the same in trust. On the contrary, the evidence affirmatively shows that Jensen was in possession of the property and held a contract for the purchase thereof from the plaintiff. Apparently the plaintiff who sold the property knew nothing of the interveners' claim until just before they intervened in this action. Interveners were present when the deal for the transfer of the Lewiston property to the plaintiff and the purchase of the Lincoln street property was entered into, and yet they did not make known any claim to any interest in the Lincoln street property. So far as appears, there was no instrument of record to indicate that the Wests ever had or claimed to have any interest whatever in the Lincoln street property.

The interveners offered evidence tending to show that the Lincoln street property had a market value of $5,500 at the time the plaintiff and Jensens entered into the contract for the sale and purchase thereof. The defendants offered evidence tending to show that its market value at that time was between $4,000 and $4,500. There is no finding as to the market value of that property. The defendant Bench testified that he agreed to pay, and that he had paid, the equivalent of $4,225 for the Lincoln street property. The only finding as to what Bench paid was that he paid the plaintiff the sum of $100 on the contract for the purchase of that property. The findings of fact are silent as to whether or not Bench paid, or agreed to pay, anything in addition to $100 for the assignment of the contract to him. Obviously, if Bench agreed to pay and did pay $4,225, or any other sum, for or on account of the purchase of that property without notice of any defect in Jensen's title, it cannot be held that Bench is without right in the property involved in this proceeding. In the absence of a finding as to the market value of that property at the time the assignment was made to Bench and the amount that Bench paid, or agreed to pay, for the assignment, it cannot be said "that the consideration paid by him to said Jensen for the assign-

ment to him of the said agreement or bond for deed was and is grossly insufficient and inadequate." Under the facts in this case, it would seem clear that any payments which defendant Bench paid to Jensen for the assignment of the contract for the sale of the Lincoln street property is superior to any claim that the interveners have to such property. That the defendant Bench paid a substantial sum to Jensen for the assignment of the contract of sale is shown by the uncontradicted evidence. So far as appears, there is no good reason why such evidence should not be believed.

For the reasons stated, the judgment appealed from should be, and accordingly is, reversed. This cause is remanded to the district court of Salt Lake county, with directions to grant a new trial. The appellants are awarded their costs.

STRAUP, C. J., FOLLAND, and MOFFAT, JJ., and R. I. McDONOUGH, District Judge, concur.

EPHRAIM HANSON, J., being disqualified did not participate herein.