PERKINS et al. v. SPENCER et al.

No. 7565.   Decided April 21, 1952.   (243 P. 2d 446.)

470

See 52 C. J. S., Landlord and Tenant, sec. 782. Intention of parties determining liquidated damages or penalty. 15 Am. Jur., Damages, sec. 243; 78 A. L. R. 846.

*Peter M. Lowe,* Provo, *Richard M. Taylor,* Spanish Fork, for appellants.

*Hugh V. Wentz, Provo,* for respondents.

CROCKETT, Justice.

This controversy is grounded upon a uniform real estate contract by which the defendants Spencer sold a home in Provo to the plaintiffs Perkins. The action in the district court, from which this appeal is taken, supplants an action for unlawful detainer in the city court of Provo wherein the Spencers alleged forfeiture of the contract and sought to evict the Perkinses from the property. In this action, the Perkinses sought to avoid the effects of the strict provisions of the contract and the unlawful detainer action by asking for cancellation of the contract and the return of their money, or in the alternative to reform it in accordance with additional terms as claimed by them, and which they could meet. Defendants answered denying any such agreement and counterclaimed on the same basis as their action in the city court was founded upon, alleging forfeiture of

the contract for non-payment, and sought to repossess the premises.

The trial court ruled for the defendants, allowing them to rescind the contract for non-payment; permitting them to keep the amount paid in as liquidated damages, and also awarding treble damages for unlawful detainer after notice to quit.

Two points are urged on appeal, that the court erred: (1) In granting treble damages for unlawful detainer against the plaintiff, Mrs. Perkins; and (2) In ruling that the money paid in by plaintiffs constituted liquidated damages and not a penalty.

The contract provided that plaintiff Perkins would pay $10,500 for the home; $2500 was paid down and the balance was to be paid $75 per month until the Perkinses sold their home in Bountiful, Utah. When this was accomplished, they were to use the proceeds therefrom, together with what money they could borrow under an F. H. A. loan on the home purchased from Spencers, and pay the remaining balance on the contract. The Perkinses claim that the parties agreed that if these two sums were not enough to pay off the Spencers, the latter would accept a promissory note payable over a reasonable time, to take care of the difference. This was not included in the written contract. Upon conflicting evidence, the trial court found that there was no such collateral agreement and this finding will not be disturbed although it is obvious that there was, or ought to have been, some agreement regarding it because the parties could not be absoultely certain that the two sums mentioned would cover the entire contract price.

The contract was signed May 18, 1949. No time limit was fixed in which the Perkinses had to sell their Bountiful home but the idea seems to have been that they would go forward with selling it and arranging for the loan as soon as possible. They made their payments of $75 per month for June, July, and August. The F. H. A. loan on

the Provo home for the maximum amount procurable, $6,-000, was arranged for and the Bountiful home was sold by September 17th. Perkinses then indicated to the Spencers that they were in a position to pay off the contract except for $1,092.29. They offered to sign a promissory note for that amount payable on some reasonable terms the parties could agree upon. This the Spencers refused, insisting on payment of the whole balance. They claimed that the proceeeds of the sale of the Bountiful home, plus the F. H. A. loan, were sufficient to pay off the contract.

It is true that the gross amounts of such proceeds would have paid off the Spencers. But when the real estate commission, loan costs, insurance, and certain other expenses necessary to the completion of the transaction are taken into account, not enough money remained to pay off the contract. It is impossible to tell from the record just how the figure of $1092.29 was arrived at or whether it was the correct amount. Suffice it to say that there has never been any dispute between the parties as to the amount the Spencers had coming. The dispute was only as to the manner of payment. The Perkinses were offering to perform the contract according to their understanding of the collateral agreement and the Spencers refused to accept any note at all.

The parties were in disagreement as to the carrying out of the contract; the Perkinses did not make any payment for September; the 30-day grace period was up on October 25th, and on November 3d, the Spencers served notice that unless the buyers paid the entire remaining balance of $7940.10 within five days the buyers would be tenants at will and all moneys paid would be forfeited as liquidated damages. Payment was not made and on November 9th, the sellers served another notice informing the buyers that they were tenants at will and requiring them to vacate the premises within five days. No question is raised in this case concerning the sufficiency or propriety of the notices served

except as hereinafter discussed in reference to the item of treble damages.

Respecting the matter just mentioned, the notice to quit was served upon Mrs. Perkins but not upon Mr. Perkins personally. An attempt was made to serve him under the alternate to personal service set forth in Section 104-60-6(2), U. C. A. 1943, which requires the leaving of a copy with some person of suitable age and discretion at the resident *and* sending a copy through the mail addressed to him. A copy for him was left with Mrs. Perkins but none was mailed. Unlawful detainer, being a summary procedure, the statute must be strictly complied with in order to enforce the obligations imposed by it. The trial court correctly ruled that the action for unlawful detainer could not be maintained against Mr. Perkins. He awarded judgment against Mrs. Perkins for treble damages totaling $535.50 for the period of occupancy after the notice to quit.

Mr. Perkns was working in Carbon County at the time the notice was served. However, there is nothing to indicate that he had abandoned the premises, or that the marital unity of the parties had been severed. The fact appears to be to the contrary. The manner of procedure by Spencers against both seems to assume that fact and the pre-trial order to which the parties agreed recites that the plaintiffs (plural) were in occupancy of the premises. Therefore, it is to be regarded as conclusive that Mr. Perkins was occupying the premises. So long as he remained in possession, it is difficult to see how Spencers could be damaged by that fact that Mrs. Perkins remained there. Even if she had moved, Spencers would have had no right to possession of the premises as against Mr. Perkins. They, therefore, suffered no actual damage. In *Forrester* v. *Cook*, 77 Utah 137, 292 P. 206, 211, we held that

"The damages which may be recovered in an action such as this one (unlawful detainer) are measured by the rule that they must be the

natural and proximate consequences of the acts complained of and nothing more."

Nominal damages to vindicate their right to possession against her is all that could properly be awarded.

A more serious question is raised by the appellants' second point, that is, that the court erred in holding ■ the total sum paid in to be liquidated damages. It is true that

"* * * This court is committed to the doctrine, that where the parties to a contract stipulate the amount of liquidated damages that shall be paid in case of a breach, such stipulation is, as a general rule, enforceable, if the amount stipulated is not disproportionate to the damages actually sustained."

*Bramwell Inv. Co.* v. *Uggla,* 81 Utah 85, 16 P. 2d 913, 916. In that case the amount of forfeiture involved was $500 on a contract of $5,128 and was not greatly disproportionate to the actual damage. Other Utah cases consistent with this rule and considering the matter of liquidated damages as opposed to penalty are *Dopp* v. *Richards,* 43 Utah 332, 135 P. 98; *Cooley* v. *Call,* 61 Utah 203, 211 P. 977; *Western Macaroni Mfg. Co.* v. *Fiore,* 47 Utah 108, 151 P. 984; *Thomas* v. *Foulger,* 71 Utah 274, 264 P. 975; *Croft* v. *Jensen,* 86 Utah 13, 40 P. 2d 198; *Christy* v. *Guild,* 101 Utah 313, 121 P. 2d 401. See also *Malmberg* v. *Baugh,* 62 Uah 331, 218 P. 975; *Young* v. *Hansen,* 117 Utah 591, 218 P. 2d 666, and *Green* v. *Nelson,* 120 Utah 155, 232 P. 2d 776.

It will be observed that in all cases where the stipulation for liquidated damages was enforced it bore some reasonable relation to the actual damages which could reasonably be anticipated at the time the contract was made and was not a forfeiture which would allow an unconscionable and exhorbitant recovery.

Illustrative of this is the case of *Cooley* v. *Call,* 61 Utah 203, 211 P. 977, relied on by the defendants. Plaintiff

sellers sued defendant purchasers who were in default under a real estate contract. Defendants had paid in $1850 as an initial payment and some interest and taxes, making a total of about $2100. No monthly payments were provided for but certain lump sum payments were to be paid to complete the contract in two years so there was no immediate return to the sellers to take care of the current rental value. None of the sums were ever paid and the entire two years expired before the action was brought. The court figured the amount paid in mathematically, concluded that it equalled about 10% per annum on the purchase price and accordingly held that the amount was not so excessive as to be unconscionable and therefore did not represent a penalty upon the defendant.

The same is true of *Christy* v. *Guild,* 101 Utah 313, 121 P. 2d 401. There, the defendants had made no down payment. While they had paid in approximately one-third of the purchase price, they had paid only $20 to $30 each month over the period, plus making improvements on the premises totalling $2,000. But the property had a monthly income to them of $75, which exceeded the total of the payments they had made plus their improvements. After reviewing those facts, it was held that the forfeiture provision was not a penalty under the rule above stated.

On the contrary, where enforcement of the forfeiture provision would allow an unconscionable and exorbitant recovery, bearing no reasonable relationship to the actual damage suffered, we have uniformly held it to be unenforceable. In *Western Macaroni Mfg. Co.* v. *Fiore,* ■ supra, the seller brought an action against the buyer under a contract whereby the seller undertook to pay $500 as damages if he violated any of the provisions of the contract providing for exclusive sale of macaroni to the defendant. Defendant failed to pay for merchandise, and the plaintiff sold to others. The forfeiture appeared to apply to any breach of the contract which might be of varying degrees of importance. It was held that the $500

forfeiture provision was a penalty which could not be enforced. In *Malmberg* v. *Baugh,* 62 Utah 331, 218 P. 975, $2500 was paid down, further payments were made bringing the total to $4450 of the full contract price of $10,000. The buyer was in occupancy of the property for 22 months; this court clearly indicated that they regard forfeiture of such sum as excessive and would not allow its retention.

In *Croft* v. *Jensen,* 86 Utah 13, 40 P. 2d 198, 202, the plaintiff seller sued for restitution of premises and damages. The defendant's default consisted of failure to pay two $50.00 installments. Only $200.00 remained due of a total obligation of $6500.00. A provision of the contract was that upon default of the purchaser all payments theretofore made should be considered liquidated damages. This court said:

"To permit plaintiff to retain $6,300 as liquidated damages because she was not promptly paid two installments when there was only $200 remaining unpaid on the contract is not in accord with equity and good conscience, but is clearly unconscionable. * * *"

A recent expression of this court affirming this rule is found in *Young* v. *Hansen,* 117 Utah 591, 218 P. 2d 666, 669:

"* * * The contract did not provide for retention of the money and even if it did, it is questionable that such a provision could be enforced, as defendants would acquire an unconscionable advantage and be unjustly enriched at the expense of plaintiffs as there is no showing that defendants have suffered any damage."

The rulings in the foregoing cases are in accord with the law as summarized in the Restatement of Contracts, § 339, dealing with the question of whether a forfeiture provision is liquidated damages or a penalty, which states:

"(1) An agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

On the same subject, the eminent authority, Mr. Willison on Contracts, Rev. Ed. § 779, p. 2191, says:

"In spite of the language of cases regarding the intention of the parties, there is little doubt that a sum named as liquidated damages in order to be given effect must be reasonable in amount. Under the recent decisions of the most authoritative courts, the primary question seems to be whether the parties honestly endeavored to fix a sum equivalent in value to the breach. This is but saying in other words that the reasonableness or unreasonableness of the stipulation is decisive."

The construction of such a provision in a contract depends upon an interpretation of the whole instrument in the light of all of the circumstances surrounding the transaction. 1 Pomeroy's Equity Jurisprudence 819. In this case a real estate man procured the printed uniform real estate contract and has his stenographer fill in the blanks. It was submitted to the parties who signed it wthout discussing or giving any special attention to the forfeiture provision. The Perkinses paid down $2500 of the $10,500. In addition, they paid $75 per month which was the reasonable rental value of the property as determined by the court, and which assured the Spencers of a fair current return on the property, so they were suffering no loss on that score. Although no time limit was set for completing the contract, it is plain to be seen that the parties had in contemplation a short period of a few months at most for the Perkinses to sell the Bountiful property. In the event of their failure to perform, the only potential damages to the Spencers would be a decline in the market or loss of an advantageous bargain. There was no such loss of any consequence.

The amount paid in was over 25%. Figuring it on an annual basis, that would amount to more than 50% per annum return to defendants on the value of their property. It therefore appears that the provision meets neither of the

above mentioned requirements of Section 339 of the Restatement of Contracts in order to be enforceable; that is, (1) the amount was not a reasonable forecast of just compensation for the harm caused by the breach, and (2) the damage actually suffered is not such as is incapable of accurate determination. As a matter of fact, it could be determined to a high degree of certainty.

The plaintiffs had made each payment as due up until the dispute arose four months after the execution of the contract. Under the circumstances of this case, to permit the Spencers to insist upon payment of the entire balance or forfeit the contract and retain the whole $2725 would allow an unreasonable and exorbitant recovery to them and impose a hard and arbitrary penalty upon the Perkinses. Section 339(1) of the Restatement of Contracts referred to above says further:

"(a) Punishment of a promissor for breach without regard to the extent of the harm that he has caused, is an unjust and unnecessary remedy * * *."

We hold that under the facts of this case, the forfeiture provision amounted to a penalty which is unenforceable. Defendants contend that to so rule nullifies their contract and leaves them with no other recourse than they would have had if no such provision had been included. It is true that this should be done only with great reluctance and when the facts clearly demonstrate that it would be unconscionable to decree enforcement of the terms of the contract. This is such a case.

When the contract provision is unenforceable, the only way rights of the parties can be adjusted is on the basis of damages ordinarily recoverable for such breach of contract. See *Malmberg* v. *Baugh*, supra.

The vendors are entitled to any loss occasioned them by any of these factors:

(1) Loss of an advantageous bargain;

(2)   Any damage to or depreciation of the property;

(3)   Any decline in value due to change in market value of the property not allowed for in items nos. 1 and 2; and

(4)   For the fair rental value of the property during the period of occupancy.

The total of such sums should be deducted from the total amount paid in, plus any improvements for which it would be fair to allow recovery, and any remaining difference awarded to the plantiffs.

The case is remanded to the District Court to determine the amount to be allowed defendants and to award the balance to the plaintiffs in accordance with the views herein expressed. We expressly exclude therefrom any consideration of what the Spencers were going to do with the money if they had received it and the possibility of loss or gain therefrom.

WADE and McDONOUGH, JJ., concur.

WOLFE ,Chief Justice (concurring).

Considerable difficulty has been experienced by the courts in arriving at a logical and workable basis for refusing to allow the seller, under a clause permitting him, to retain after buyer's default an unreasonably large amount paid in by the buyer under the contract. The desire of the courts not to permit the seller to retain an amount greatly in excess of damages which he has actually suffered is, of course, responsive to the belief that it is inequitable for the seller to reap a windfall out of the contract. In contracts, as distinguished from torts, damages for breach or default may usually be ascertained with a fair degree of accuracy. Consequently, an excess amount, markedly above those damages, is in the nature of an enrichment not deserved.

But the difficulty of the courts has not been in determining what result should be reached but how logically it

should be reached. At the time the parties make the contract, they agree on what is called liquidated damages. Of course, if it really is a penalty because not naturally related to any damage suffered, such as an agreement, for instance, to buy a certain amount of coal in case of default in a real estate contract, the law has no difficulty. No party can legally penalize another because of a breach. The law recognizes damages but not punishment as the natural consequence of an injury suffered by a party who is denied what another agreed to do or give.

It is impossible in many, if not most cases, for the parties *on the date of the making of a contract* which provides for the payment of installments over an extended period of time to know what the damages will be in the future in the event the buyer defaults because it will not be known when he will, if ever, default. Usually at the time when the default or breach occurs, the damages as of that time may be fairly and with reasonable accuracy ascertained. But to accurately estimate what the damages will be at a time long hence is impossible and in the nature of a prophecy or guess. I will hereafter point out that it is possible to provide in seller-buyer title retaining contracts a formula by which damages at any time may be ascertained with fair accuracy.

The law should recognize this difficulty and hold that in contracts where the fixing aforehand of the *amount* of damages (liquidation) is attempted, such provision will not be recognized because it must necessarily be only a guess which may or may not be accurate. The right of the seller to retain all payments made by the buyer should exist as security only until the damages are ascertained. If the right to agree in such types of contract to a certain amount as liquidated damages is recognized, it must always be subject to what every contract is subject to, viz. the duty of the court to determine whether its offices are being used to exact an unconscionable requirement or amount.

I think a holding that if the sum already paid in at the time of breach or default is greatly in excess of the amount of the actual damages, the stipulation (providing for its retention as liquidated damages) will be construed as providing for a penalty, but if reasonably near the actual amount of damages will be construed as satisfying such stipulation, is illogical if not unworkable. That the *nature* of a provision in a contract cannot be ascertained beforehand but may vary and shift according to the state of the account between the parties to the contract at different times during its life from a provision for liquidated damages to a provision for a penalty, or vice versa, depending on the time of the breach and when the accounting is made is an anomaly in the law. Under various states of fact at date "x," it may be a penalty; at date "y," a provision for liquidated damages, depending upon when the breach may take place.

What is meant to be accomplished is the simple *desideratum* of not permitting a party to a contract to do an unconscionable thing. Unconscionableness may be present at the making of the contract or it may arise at the time of default or time of enforcement. But courts inherently have the power to refuse to lend themselves to unconscionable acts. All that is required is that courts, when asked to enforce an unconscionable provision in a contract, refuse to do so because at the time the enforcement is asked it would be unconscionable to do so. There is no need of indulgng in a useless attempt to find out at any certain time whether a provison calls for liquidated damages or a penalty. All that rationale may and should be dropped for it makes the determination depend not on any facts which can be ascertained at the time of the making of the contract but on what the situation happens to be at the time when the breach occurs. At one time it will be validly liquidated damages; at another, it may be a penalty. Therefore, in this case I concur on the ground that the court should have refused to enforce the provision permitting re-

tention of all the money already paid in, not on the ground that the provision was a "penalty provision" but because under the rule laid down by the American Law Institute in its Restatement of Contracts, § 339, set out in the main opinion, as I have herein interpreted it, the provision is unenforceable at any time. I say, "as I have herein interpreted it," because I have doubts as to whether Section 339 was meant to apply to long term seller-buyer real estate contracts. Judging from the illustrations appearing in the context under Section 339, it applies rather where the performance is a single act. But it may be applied to a seller-buyer long term real estate contract if given the interpretation I place upon that section, and at the same time eliminate resting the principle on the shifting and senseless foundation of whether it is a provision for liquidated damages or a penalty.

Section 339 recognizes the principle that the question of whether a stipulation for liquidated damages is enforceable must await the time when enforcement is asked for. It states that

"an agreement *made in advance* of a breach fixing damages therefor, is *not enforceable as a contract* and does not affect the damages recoverable for the breach (a) *unless* the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, *and* (b) the harm caused by the breach is one that is incapable or very difficult of accurate estimation". (Emphasis supplied.)

This statement recognizes that the court need not honor a provision for a forfeiture, except under the two named conditions. This works out in requiring, I think, that the amount demanded as liquidated damages be conscionable. It may furnish a different test by requiring the amount so fixed to be a

"*reasonable* forecast [instead of conscionable at the time enforcement is asked] of just compensation". (Emphasis mine.)

Of course, the time when the "reasonable forecast" is to be made under this rule is at the time of the making of the contract and not at the time of the breach or the time enforcement is asked for; otherwise neither the words "forecast" nor "estimation" would be applicable. It would seem that in these long-term-seller-buyer real estate contracts,

"the harm that is caused by the breach is one that is [not] incapable or [not] very difficult of accurate estimation,"

because at the time of the breach the parties could ascertain to a fair degree of accuracy what the damages were, taking into consideration all the factors of the formula for fixing damages contained in the main opinion, and hence at the time of the making of the contract a reasonable forecast of the harm caused by a breach at any time during the life of the contract could be made. Therefore the harm which would be caused by a breach at any time would not be difficult to estimate by application of the formula which included those factors. If by such a formula the amount of just compensation for the harm could be fixed or forecast at the time of the making of the contract, there would be no difficulty or incapability of accurate estimates; hence the forfeiture clause fixing damages in advance of a breach would, under the Restatement of Contracts, § 339, not be enforceable.

Under this rule, it would not be necessary to determine whether the forfeiture provision was at the time of breach or at any time, a provision for liquidated damages or for a penalty. In this type of contract, under my interpretation of the conditions (a) and (b), the liquidated damages provision in these real estate contracts would always be unenforceable and the way would be open for the application of the simple question of damages. Consequently, I think the Restatement as a practical matter rules out retention clauses in seller-buyer contracts.

I accept the formula for determining damages upon default of the buyer contained in the opinion of Mr. Justice

CROCKETT, subject to the following observation: Any damage to or depreciation of the property sustained during the buyer's period of occupancy will be reflected in a decline in the market value of the property. Therefore, it is unnecessary in the formula to list "any damage to or depreciation of the property" separate from "any decline in market value of property." When an appraiser determines the market value of the property at the time of repossession by the seller, he will take into consideration in arriving at that figure that the property has depreciated or has been damaged while the buyer was in occupancy.

For he reasons herein stated, I agree in the result.

HENRIOD, J., did not participate.