393 P.2d 468

Leo VAN ZYVERDEN and Sytske Van Zyverden, his wife, Plaintiffs, Respondents, and Cross-Appellants,

v.

Ralph W. FARRAR and Helen R. Farrar, his wife, Defendants,

and

Seagull Investment Company, Defendant and Appellant.

SEAGULL INVESTMENT COMPANY, Plaintiff and Appellant,

v.

Leo VAN ZYVERDEN and Sytske Van Zyverden, his wife, Defendants and Respondents.

Nos. 9945, 9946.

Supreme Court of Utah.

June 22, 1964.

Ronald C. Barker, Salt Lake City, for appellant.

George M. McMillan, Salt Lake City, for respondents.

McDONOUGH, Justice.

This action centers around a real estate contract between Van Zyverdens as buyers,

and Seagull Investment Company, assignees of the sellers. The Van Zyverdens commenced an action on December 1, 1961, against Seagull and its assignors, Farrars, claiming breach of contract. The following month, on January 16, 1962, Seagull brought a separate action aaginst Van Zyverdens claiming forfeiture of the contract, alleging unlawful detainer and seeking possession of the property. After a great deal of legal shadow boxing, the disputed issues of which were disposed of by the trial court within the limits of its prerogatives, the actions were consolidated for trial. The court found against both parties and dismissed their respective actions. Seagull appeals and the Van Zyverdens cross-appeal.

The property in controversy is known as the Daniels Creek Ranch, located at the mouth of Daniels Canyon in Wasatch County. It was used as a dairy farm, having the necessary equipment and machinery and a "milk-base" to market through the Hi-Land Dairy. A prior owner, M. R. Mickelsen, had sold the ranch on June 15, 1956, to one LaVerda Lynn, by a contract containing a restriction against selling the milk-base without Mickelsen's permission, it being reserved as security until June, 1962. Lynn in turn sold her interest to Farrars, retaining the same restriction in the contract. During the next few years Farrars leased the ranch to successive persons who attempted to run the dairy farm as a profit-

able business before they sold it to the Van Zyverdens. They did not mention to Van Zyverdens the restriction on the transfer of the milk-base. On the contrary, the contract expressly provided:

"It is agreed that the Hi-Land milk-base * * * and all milking equipment as above mentioned, can be exchanged for livestock or horses of equal value, remaining security for the period of two years as agreed above."

Shortly after purchasing the property Van Zyverdens found a buyer for the milk-base, a Mr. Pert, and advised Farrar, who gave his approval of the prospective buyer, and contracted Hi-Land Dairy to transfer the base. However, Mickelson heard about the proposal and, in order to protect his security, notified Hi-Land not to transfer it. In November of 1961, Farrars assigned their interest to Seagull, the latter agreeing to observe and perform, "all terms, conditions and provisions of said agreement that are to be kept, observed and performed by the assignors."

Van Zyverdens claim that it was because of the restriction which prevented them from selling the milk-base that they were unable to purchase the necessary livestock to profitably operate the ranch, and as a consequence thereof, were unable to make their payments. They claimed that in addition to delivering certain machinery and livestock to the Farrars as a down payment, they had further invested $9,000 in the

property in installing a pump, fencing, and in making repairs. However, they did not make their payments on the contract, and failed to pay property taxes and water assessments as it required them to do.

On November 15, 1961, two weeks after the first annual payment was due, Seagull made demand on Van Zyverdens for payment. Another two weeks later, on December 1, 1961, Van Zyverdens filed an action against the Farrars and Seagull, asserting breach of contract in regard to the milk-base. On this same date Seagull claims to have sent Van Zyverdens a notice to remedy their default or quit the premises. On December 14, 1961, Van Zyverdens caused a copy of the summons and complaint in their action above referred to to be served upon Seagull. The latter appears to have ignored this and on January 3, 1961, gave notice to the Van Zyverdens requiring them to remedy their default or quit the premises within five days. On the following day, January 4, 1962, the Van Zyverdens took default judgment against Seagull in the action for breach of contract. On January 16, 1962, Seagull brought a separate action against the Van Zyverdens alleging unlawful detainer, and on January 27, 1962, served requests for admissions upon them. On January 31, 1962, the Van Zyverdens moved to strike the requests for admissions on the grounds that the Seagull action constituted a compulsory counterclaim which should have been asserted in the Van Zyverden

action, which by now had culminated in judgment, and was res adjudicata. On February 5, 1962, the court on motion set aside the default which had been entered against Seagull on January 4, 1962. On February 10, Seagull, apparently uncertain as to the sufficiency of the notice it had served on January 3, served upon Van Zyverdens another notice to pay up or quit within five days. Three days thereafter, on February 13, 1962, Seagull filed a counterclaim in the action Van Zyverdens had commenced for breach of contract. Thereafter the actions were consolidated and proceeded to trial.

In regard to Seagull's action in unlawful detainer the trial court held that it had not given proper notice to satisfy the requirements of the unlawful detainer statute (78–36–3, U.C.A.1953). The contract provides that for failure of the buyer to make payments when due, or within 30 days, the seller, *at his option* shall have alternative remedies including:

"\* \* \* Upon failure of the buyer to remedy the default within five days after written notice, to be released from all obligations \* \* \* and forfeit all payments as liquidated damages \* \* the buyer becoming at once a tenant at will \* \* \*."

This provision requires the seller to make his election; and the buyer is entitled to notice that he has done so. It

is not until this is accomplished that the buyer actually becomes a tenant at will. It is only after the buyer is in the status of a tenant at will that he is amenable to the notice provided by Section 78–36–3, which requires him to vacate within five days or be guilty of an unlawful detainer. It is uniformly held that unlawful detainer statutes provide a severe remedy and must be strictly complied with before the cause of action thereon may be maintained. Perkins v. Spencer, 121 Utah 468, 243 P.2d 446. The court correctly held that the later notice, served on the Van Zyverdens on February 10, was not effective to perfect Seagull's right to maintain unlawful detainer in this action. This notice was served after the action had been commenced. Whether such a cause of action exists is to be determined at the time the action is commenced. It is to be noted that the counterclaim filed February 13, 1962, relies on the same foundation as the prior action commenced by Seagull.

We have concluded as above in spite of the alleged admission of the Van Zyverdens as to the notice Seagull claims to have served in December. Regardless of the dispute over this matter, denial was made at least well prior to the trial, and in the testimony given; and the court having determined the issue it is now concluded.

■ The Van Zyverdens' alleged cause of action against Seagull and Farrar is grounded upon the interference with and prevention of Van Zyverdens selling the milk-base. They contend that the provision that it "can be exchanged for livestock or horses of equal value" authorized them to sell it and purchase livestock. It is to be observed that Mr. Mickelsen may well have been justified in refusing to consent to an outright sale of the milk-base by a purchaser who might default. This would have presented quite a different situation than exchanging it for livestock to be kept on the place which would have remained as security. However, the trial court placed his rejection of the Van Zyverdens' action not on their failure to prove a breach of agreement, but that they had failed to show any damages resulting from their inability to sell the milk-base. While we do not confront the question here, it is conceivable that under a particular fact situation, for example if the Van Zyverdens had lost a favorable sale, or the market value of the milk-base had diminished, they might have suffered some damage because of their inability to sell it at the time they proposed to do so. But their offer of proof was not of that character. It was that they could have sold the milk-base for $3,000 and have turned the money into beef cattle sufficient to operate the ranch on a profitable basis and to have paid the required payments and taxes. Under the well settled rule that damages for anticipated profits are contingent upon so many uncertainties that

they are speculative and therefore not recoverable, Jenkins v. Morgan, 123 Utah 480, 260 P.2d 532, the trial court was justified in rejecting the offer and holding that the Van Zyverdens had proved no damage.

Other points raised are deemed without merit, including Seagull's argument that the Van Zyverdens' appeal should be dismissed.

Affirmed. The parties to bear their own costs.

HENRIOD, C. J., and CALLISTER, CROCKETT, and WADE, JJ., concur.