Royal W. SIMS and the R. W. Sims Trust, Plaintiffs,

v.

WESTERN STEEL COMPANY, a corporation of the State of Utah, Defendant.

Civ. No. C 74–131.

United States District Court, D. Utah.

Sept. 23, 1975.

John A. Young, Fort Wayne, Ind., for plaintiffs.

George M. McMillan, Paul L. Badger and K. S. Cornaby, Salt Lake City, Utah, for defendant.

## OPINION AND ORDER

RITTER, Chief Judge.

The plaintiffs, Royal W. Sims and the R. W. Sims Trust, brought this action under 28 U.S.C. Section 1338(a) (1970) [1] and 35 U.S.C. Section 271(b) (1952) [2] alleging infringement of Patent No. 2,859,949 by the defendant, Western Steel Company. Plaintiffs seek a permanent injunction against further infringement of the patent by the defendants, an accounting of all profits realized by the defendant as a result of the alleged infringement, damages and attorney fees.

[1]. 28 U.S.C. § 1338(a) (1970) reads:
   (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

[2]. 35 U.S.C. § 271(b) (1952) reads:
   (b) Whoever actively induces infringement of a patent shall be liable as an infringer.

## I.

In December of 1968 this Court issued an order of dismissal in the matter of *Sims v. Western Steel Co.*, Civil No. C 215–67 (D.Utah, Dec. 13, 1968) pursuant to a stipulation for dismissal dated December 13, 1968. The parties also entered into a settlement agreement dated December 14, 1968 and a license agreement dated December 12, 1968. The license agreement provided in part that:

All engineering drawings, plans, designs, and specifications covering the Forward Discharging Transit Concrete Mixer within the concept of the Patent Rights of LICENSOR under this License, shall be upon termination of this License as provided hereinabove, returned to LICENSOR at the date of termination. And further, LICENSEE shall assign to LICENSOR at the termination of this License, any and all improvements, pending applications, patents or letters patent with respect to further inventions on or in connection with the Front End Discharging Transit Concrete Mixer concept, together with all designs and blueprints relating to the manufacture and assembly thereon.

In 1971 the defendant, Licensee, sold engineering drawings, plans, designs and specifications covering the front end discharging transit concrete mixer to Rite-Way, Inc. of Indiana.

After a hearing on plaintiffs' motion for summary judgment this Court issued an order of partial summary judgment for the plaintiffs on December 20, 1974. The order determined that the defendant is liable to the plaintiffs for breach of the license agreement.

Defendant subsequently moved to set aside the order granting partial summary judgment on the grounds of a lack of jurisdiction and that there are issues of material fact which must be resolved before summary judgment may be granted. The factual issues asserted are: (1) whether the plaintiff is the owner of Patent No. 2,859,949, (2) whether the Patent is valid, (3) whether the defend-

ant actively induced infringement of the Patent, (4) whether Rite-Way, Inc. utilized the materials sold them by the defendant to infringe upon plaintiffs' rights, (5) whether the settlement agreement releases and discharges any rights plaintiffs may have had against defendant as a contributory infringer of the Patent, and (6) whether the word "returned" in the license agreement obligated the defendant to deliver all drawings, plans, designs or specifications covering the forward discharging transit concrete mixer to the plaintiffs. Defendant also filed a suggestion of lack of jurisdiction.

## II.

### A. *Jurisdiction*

In suggesting a lack of jurisdiction the defendant relies on *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), in which the Court, at 246, 53 S.Ct. at 589, distinguished

. . . between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the non-federal *ground*; in the latter it may not do so upon the non-federal *cause of action*.

This formula, however, has been considerably modified by the United States Supreme Court since the adoption of the Federal Rules of Civil Procedure. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) the Court held that:

Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority

. . .," U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103 [53 S.Ct. 549, 77 L.Ed. 1062].[3]

In the instant case the plaintiffs have presented two causes of action, one federal in nature and one state, derived from the same operative facts. The federal claim is substantial. Plaintiffs' claim of patent infringement under 28 U.S.C. Section 1338(a) (1970) and 35 U.S.C. Section 271(b) (1952) is one over which the United States District Courts have exclusive and original jurisdiction. That claim has not been dismissed or shown to be spurious. The claim has not been abandoned by the plaintiffs. Therefore this Court possesses and has properly exercised jurisdiction to hear and decide the pendent state claim.

### B. Issues of Material Fact

The Court is not persuaded by defendant's assertion of numerous items of material fact which need to be decided prior to granting summary judgment for the plaintiffs on the pendent state claim.

The first four issues asserted: (1) whether the plaintiff is the owner of Patent No. 2,859,949, (2) whether the Patent is valid, (3) whether the defendant actively induced infringement of the Patent, and (4) whether Rite-Way, Inc. utilized the materials sold them by the defendant to infringe upon plaintiffs' rights, are not relevant to the partial summary judgment. These are issues of fact related to plaintiffs' federal claim of inducement to infringe on patent rights not to the pendent claim of a

breach of the license agreement. Even if issues 1 & 2 were crucial to the partial summary judgment the Court has not heard any persuasive argument to indicate that the plaintiffs do not own a valid patent, No. 2,859,949.

Under the decision of the Supreme Court in *United Mine Workers v. Gibbs, supra* and the cases which have followed[4] it is not necessary for this Court to enter final judgment on the federal claim prior to deciding the nonfederal breach of contract claim.

Defendant's fifth issue, whether the settlement agreement releases and discharges any rights plaintiffs may have had against defendant as a contributory infringer of the patent, also deals with the federal claim. Further, on this point counsel has misinterpreted the federal cause of action. The plaintiffs have alleged that the defendant is guilty of inducement to infringe not of contributory infringement. In any case there is no indication that the settlement agreement releases and discharges any rights plaintiffs may have against defendant for a breach of contract.

Defendant's sixth issue, whether the word "returned" in the license agreement obligated the defendant to deliver all drawings, plans, designs or specifications covering the forward discharging transit concrete mixer to the plaintiffs, or only those which were delivered by the plaintiffs to the defendant prior to the termination of the license agreement, has already been ruled upon by this Court. The uncontested facts are as follows. First, the parties entered into a license agreement. Second, the agreement provided that upon termination of the agreement "all engineering drawings, plans, designs, and specifications covering the Forward Discharging Transit Concrete Mixer within the concept of the Patent Rights of LICENSOR

---

3. 383 U.S. at 725, 86 S.Ct. at 1138 (footnote omitted, brackets and elipses in original).

4. *See Rosado v. Wyman,* 397 U.S. 397, 403–05, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970);

*Hagans v. Lavine,* 415 U.S. 528, 545–50, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Stevens v. Rock Springs Nat'l Bank,* 497 F.2d 307, 310 (10th Cir. 1974).

under this License, shall be . . . returned to LICENSOR at the date of termination." Third, the license agreement has ended and been ended for several years. Fourth, engineering drawings as referred to in the license agreement exist and were in the possession of the defendant. Fifth, while demand has been made the drawings, plans, designs and specifications have never been returned to the plaintiffs.

With such uncontroverted facts before the Court it would require a contorted definition of "return" to find that the defendant has not breached the agreement. The partial summary judgment was made in reliance on the plain meaning of the word absent evidence of any other reasonable construction or intent by the parties at the time the agreement was signed.

For the foregoing reasons defendant's motion to set aside the order granting partial summary judgment is denied.

### III.

■ Having determined that the partial summary judgment was properly granted under Rule 56(d) the question of damages remains. The case law in Utah is clear on the types and measures of damages which may be awarded in cases involving a breach of contract. The purpose of damages is, of course, to restore the plaintiffs to the position they would have been in but for the wrongdoing of the defendant. *Park v. Moorman Mfg. Co.*, 121 Utah 339, 241 P.2d 914 (1952). Once the injured party has established that some damage has been suffered it falls upon the court to determine the measure of damages. It is not necessary that the proof of damages be exact. As the Utah Supreme Court stated in *Gould v. Mountain States Tel. & Tel.*, 6 Utah 2d 187, 309 P.2d 802 (1957):

> Where the plaintiff has shown actual loss of business during the period as a result of defendant's breach of contract, he will not be denied recovery because the exact amount of damage cannot be readily ascertained. *Id.*

at 192, 309 P.2d at 805 (footnote omitted).

This rule is designed to insure that a wrongdoer may not escape liability due to uncertainty of the amount of damages actually suffered by the other party.

■ Utah's rule regarding profits is also clear. Prospective profits from a business that has yet to be established are too uncertain and speculative to serve as a basis for recovery. *Jenkins v. Morgan,* 123 Utah 480, 260 P.2d 532 (1953); *Van Zyverden v. Farrar,* 15 Utah 2d 367, 393 P.2d 468 (1964). Where, however, damages are suffered by an ongoing business they ". . . need only be proved with sufficient certainty that reasonable minds might believe from a preponderance of the evidence that the damages were actually suffered." *Howarth v. Ostergaard,* 30 Utah 2d 183, 187, 515 P.2d 442, 445 (1973). In such cases lost profit as well as compensation for damage to the good will of the business may be awarded. *Trans-American Collections, Inc. v. Continental Accounting Service House, Inc.,* 342 F.Supp. 1303 (D.Utah 1972).

■ Punitive damages may also be awarded in such cases as the conduct is shown to be both wilful and malicious. *Trans-American Collections, Inc., supra.*

In this case the plaintiffs seek compensatory damages of $191,426.00, damages for conversion of trade secrets of $400,000.00, punitive damages of $250,000 plus costs and reasonable attorney fees.

Plaintiffs in support of compensatory damages established the following facts. Sims pioneered development of a three-axle mixer which in 1968 he licensed Western to manufacture under the license agreement previously discussed. At that time a third company, Rite-Way, Inc. of Indiana, was engaged in the manufacture of a four-axle mixer in competition with Western and Sims. No other company was manufacturing three-axle mixers at that time. In 1971 Western sold the drawings and specifications belonging to Sims to Rite-Way,

Inc. Rite-Way then began to manufacture three-axle mixers in competition with Sims. As a direct result of information supplied to Rite-Way by Western, from 1969 to 1971, Rite-Way also acquired a substantial and profitable business in replacement parts for the three-axle mixers. From 1971 through 1974, according to the testimony of Mr. William F. Bowen, Vice President and General Manager of Indiana Rite-Way Truck Co. and Vice President of American Rite-Way Truck Sales, Inc. from March, 1972 through July, 1974, Rite-Way made a gross profit of $230,000.00 from it's replacement parts business for three-axle mixers.

■ Testimony on lost profit was also given by Mr. Royal W. Sims. Mr. Sims, a plaintiff in this case, invented his first truck in 1960 and has produced vehicles such as the three-axle mixer since 1964. At the same time he began his replacement parts business. In his testimony Mr. Sims demonstrated his knowledge of the replacement parts business and the wear life of the mixers in operation. The Court found him to be a credible and experienced witness, expert in his field. Using the records of his company Mr. Sims prepared and presented figures which isolated and calculated the loss of gross profit to his company in the replacement parts business for three-axle mixers from 1971 through 1974 to be $283,000.00. He further testified that based upon those records and his opinion the loss of net profit for that same period was $191,426.00. The Court accepts this figure as the loss of net profit for that period on the replacement parts business for three-axle mixers suffered by plaintiffs as the foreseeable, proximate result of defendant's breach of contract. This lost profit is not speculative as in the case of a business to be established in the future. It is also supported by the figures presented by Mr. Bowen in his testimony. The plaintiffs are entitled to an award in that amount.

■ The testimony presented regarding the loss to the plaintiffs by defendant's conversion of trade secrets was conflicting. The Court, however, is satisfied by a fair preponderance of the evidence that the conversion resulted in a loss to the plaintiffs of at least $150,000.00. This loss was the direct, foreseeable and proximate result of defendant's wrongdoing.

■ The Court finds no merit to the defendant's suggestions of a bar to recovery in this area due to the release of a joint tort feasor or of defendant's claim that plaintiffs could have mitigated damages by purchasing a copy of the plans and drawings from Western. By making these documents available to others for a nominal charge Western effectively destroyed much of the value of the plans and drawings to Sims. For Sims to have purchased a copy from Western would have been pointless.

■ The defendant in this case breached the license agreement not only by refusing to return the plans and drawings to the plaintiffs but also by making these items available to a known competitor of Mr. Sims for a nominal fee. The Court after hearing all the testimony and examining all the evidence can only conclude that the conduct of the defendant was wilful and malicious. Such bad faith conduct rises to a level that requires the Court to take severe action. Such attempts to destroy the business property of another must be discouraged. Because this Court finds the conduct to have been wilful and malicious and in order to deter such conduct by others the defendants are ordered to pay punitive damages in the amount of $100,000.00.

In summary the plaintiffs are entitled to receive from the defendant compensatory damages of $191,426.00, damages for conversion of trade secrets in the amount of $150,000.00, punitive damages of $100,000.00, plus costs and reasonable attorney fees.

It is so ordered.