O'NEILL v. MUTUAL LIFE INS. CO. OF NEW YORK et al.

No. 3134.   Decided April 3, 1918.   (172 Pac. 306.)

1. INSURANCE—LIFE POLICY—NOTICE OR CLAIM OF CREDITOR—EFFECT. Mere fact that general creditor of deceased served notice on insurer that assignment of policy to claimant was fraudulently made to avoid payment of the debt did not constitute any lien, claim, or right against the moneys payable under the policy nor against the insurer.   (Page 597.)

2. INDEMNITY — BOND — "VALUABLE CONSIDERATION." Where insured's creditors filed claim against insurer on ground that policy assigned was fraudulent, payment of the policy proceeds by the insurer was not a valuable consideration for an indemnity bond for the benefit of creditors exacted from the assignee; the filing of such claim by the creditors having created no liability against the insurer, and mere fear not being valuable consideration.   (Page 598.)

3. ACTION—INDEMNITY BOND—SUIT IN EQUITY OR LAW. Where insurer required bond indemnifying it against claims of insured's creditors who alleged that assignment of policy to plaintiff was fraudulent the adequacy of plaintiff's remedy at law, either as a defense in any action on the indemnity bond or in proceedings by her to recover the money deposited to secure the bondsman, did not preclude her maintaining action to cancel the bond; there being no distinction between equity and law.[1]   (Page 598.)

---

[1] *Morgan* v. *Childs, Cole & Co.*, 41 Utah, 564, 128 Pac. 522; *Mills* v. *Gray*, 50 Utah, 224, 167 Pac. 359.

4. CANCELLATION OF INSTRUMENTS—RESTORATION OF CONSIDERATION. Where insurer required assignee of life policy to give indemnity bond against claims of creditors of insured, to do which $800 of the policy was deposited as security, and the assignee sued to cancel the bond, she was not bound to restore what she had received from the policy, since if successful she would be entitled, not only to what she had received, but to the balance of the policy.  (Page 599.)

5. CANCELLATION OF INSTRUMENTS—LACK OF CONSIDERATION. Where general creditors of insured filed notice with insurer that assignee of policy was fraudulent and the insurer before paying the policy required a bond indemnifying it against such claims, to secure which the assignee deposited part of the proceeds of the policy, since in fact there was no consideration for the bond, equity would intervene and afford the assignee relief by canceling the bond, though a court of equity will not inquire into the quantum of the consideration.  (Page 600.)

Appeal from District Court of Salt Lake County, Third District; *Hon Harold M. Stephens,* Judge.

Action by Selma O'Neill against the Mutual Life Insurance Company of New York and the Utah Savings & Trust Company.

Judgment dismissing the action.  Plaintiff appeals.

REVERSED and remanded, with instructions.

*Chris. Mathison* for appellant.

*Van Cott, Allison & Ritcr* and *Ashby Snow* for respondent.

GIDEON, J.

In this opinion the respondent Mutual Life Insurance Company will be designated "Insurance Company," and the respondent Utah Savings & Trust Company as "Trust Company."

To appellant's amended complaint the defendant Insurance Company filed a general and a special demurrer, and also a motion to strike out certain parts thereof.  The defendant

Trust Company interposed a general demurrer. Both the general and special demurrers of the Insurance Company and the general demurrer of the Trust Company were held to be good, and, the plaintiff refusing to amend after leave given, judgment was entered dismissing the action. From that judgment plaintiff appeals. It will be necessary, therefore, to state as briefly as may be the allegations of the complaint.

The corporate existence of both defendants is alleged. It is further stated: That on or about August 2, 1913, one William L. Waters died at San Francisco, Cal., and at that time an insurance policy issued by the defendant Insurance Company upon the life of Waters was in force, and there was payable under the policy the sum of $2,454.23. That on the 26th day of June, 1913, the said Waters, with the consent and knowledge of the Insurance Company, assigned the policy and all benefits thereunder to the plaintiff, Selma O'Neill. A copy of the assignment is made a part of the complaint, and in that assignment it is stated that the policy was transferred to the plaintiff, in trust for the support of the mother of deceased (who was then a resident of Salt Lake City, Utah), if living, and if not living then to the plaintiff herself. That the Insurance Company was notified of the death of the insured and payment demanded on or about the 28th day of October, 1913. That payment was refused unless the plaintiff would cause to be executed and delivered to that company an indemnity bond in the sum of $800 with surety conditioned that they would indemnify and save harmless the said Insurance Company against any loss it might sustain by reason of paying the amount of the policy to the plaintiff as trustee, and that they would defend any suit which might be instituted against the Insurance Company by one Dr. S. Nicholas Jacobs or one Mr. Bender, or any other person, and would pay all costs, counsel fees, and expenses the said Insurance Company might pay or be liable for in any suit or judgment that might thereafter be obtained against the Insurance Company, and all costs that said company might be liable to pay. That to obtain the moneys payable under the policy the plaintiff was compelled to and did on or about the 28th day of October, 1913, at Salt

Lake City, Utah, deliver to the Insurance Company her bond of indemnity executed by herself as principal and by the defendant Utah Savings & Trust Company as surety. A copy of the bond is attached to the complaint as "Exhibit A." That upon the execution and delivery of such bond the Insurance Company paid to the plaintiff the sum so payable as aforesaid. It is further alleged that the bond of indemnity was and is void for the reason that the same was given without any consideration therefor; that the only pretended consideration was a notice given prior to the execution of such bond by Dr. S. Nicholas Jacobs and Mr. Bender to the Insurance Company, claiming that the assignment of the policy from Waters to the plaintiff was made for the purpose of defrauding creditors, and also claiming that debts due them from said Waters, deceased, amounting to the sums of $540 and $240, respectively, should be paid before the proceeds of said policy were paid. It is further alleged that the assignment was not made with the intent and the same did not operate to hinder, delay, or defraud the creditors of said Waters, all of which said Insurance Company knew at the time of the execution of the bond and the payment of the moneys due under the policy; that at said time the Insurance Company knew that there did not then exist any claim, right, or lien in or upon said insurance policy or the money payable thereunder, except to the plaintiff by virtue of said assignment; that at the time of the execution of the bond and the payment of the insurance money to the plaintiff said Jacobs and Bender were general creditors of the deceased; that neither of them or any other person has ever claimed to have any right or lien in or upon said insurance policy or the moneys payable thereunder; that neither said Jacobs nor Bender, nor any other person, has ever demanded that the Insurance Company pay to them or either of them any of the moneys payable under the policy; that no person has ever claimed that the plaintiff was not entitled to such insurance money as trustee under said assignment. It is further alleged that, to induce the Utah Savings & Trust Company to become surety on the plaintiff's bond and to indemnify it against any liability by reason of

becoming such surety, plaintiff was compelled to and did deposit with said Trust Company the sum of $800, being a part of the proceeds of said insurance policy, under an agreement that the deposit should remain with the Trust Company until it should be relieved or discharged from liability by reason of becoming surety on the bond; that the plaintiff has repeatedly requested the Insurance Company to surrender the bond and to relieve plaintiff and her surety from any liability thereunder, but such company has refused to do so, and continues to refuse, and claims the right to hold the plaintiff and her surety upon the bond for an indefinite period in the future; that plaintiff desired to withdraw the money deposited with the Trust Company and has requested it to permit her so to do, but the Trust Company has refused and still refuses to pay her such money without the consent of the Insurance Company or until it is relieved or discharged from liability as such surety. Plaintiff asks for a decree of court canceling the bond and for judgment against the Trust Company for $800, and for general relief.

The indemnity bond made a part of the complaint recites the fact of the execution of the policy upon the life of the deceased for the sum of $3,000; that Lucy M. Waters, wife of the deceased, was named beneficiary in said policy; that during the years 1911 and 1912 the Insurance Company loaned certain amounts to the deceased upon the pledge of the policy; that Lucy M. Waters, beneficiary, died prior to the assignment, viz. October 12, 1912. There is also incorporated in the bond a copy of the assignment and a statement that notice had been served upon the Insurance Company by Dr. Jacobs and Mr. Bender as alleged in the complaint; and further that the Insurance Company had been requested by the plaintiff to pay the full amount due on the policy to her after deducting the amount of the money loaned to the deceased, and that the Insurance Company required a bond to indemnify it against any and all claims which might arise on account of such payment, and that by reason thereof the principal and surety bound themselves to indemnify and save harmless the Insurance Company against any loss or damage it might sus-

tain by reason of paying the amount of said policy to the plaintiff, and that they would defend any suit brought against the company on the policy by the said Dr. Jacobs or Mr. Bender, or by any other person.

It is contended by the appellant that the bond was given without consideration, and is therefore not binding upon the plaintiff or her surety, and for that reason the same should be delivered up and canceled. As alleged in the complaint, which is admitted by the demurrers filed, the only consideration for the execution of the bond was the fact that, after the death of Waters, one Dr. Jacobs and one Mr. Bender served written notice upon the Insurance Company that the assignment had been made for the purpose of defrauding Waters' creditors and that the amount due them must be paid from the moneys payable under the policy. No further action or proceedings was ever taken by either Jacobs or Bender to have their right, claim, or lien upon the money determined. The appellant contends that under the terms of the policy the amount claimed was a debt due and payable, and that the Insurance Company was under obligations to pay the same, and that it had no legal right, as a condition precedent, to demand any security or indemnity before paying the amount due as stipulated in said policy.

It must be held that the mere fact that some general creditors of the deceased had served notice, either written or otherwise, upon the Insurance Company that the assignment had been fraudulently made, or that they held a claim against the deceased which they insisted must be paid from the amount of the policy, could not, and did not, constitute any lien, claim, or right against the moneys payable under the policy, or against the Insurance Company. Wait on Fraudulent Conveyances (3d Ed.) par 73; *Simpson & Co.* v. *Dall,* 3 Wall. 476, 18 L. Ed. 265.

"A valuable consideration has been defined to consist either in some right, interest, profit, or benefit accruing to the party who makes the promise, or some forbearance, detriment, loss, responsibility, act, labor, or service, given, suffered, or undertaken by the party to whom it is made." 6 A. & E. Enc. L. 703.

If the notice served upon the Insurance Company did not have the effect of creating any lien, claim, or right against the Insurance Company or the debt it owed to the plaintiff under the terms of said policy, then it was not waiving or depriving itself of any right, interest, profit, or benefit to which it was legally entitled; consequently nothing passed from the Insurance Company to the plaintiff that would be a valuable consideration. As indicated, the only justification for demanding the bond was that the Insurance Company entertained some apparent fear or conjecture that some one might in the future have some claim on the money payable under the policy. The mere existence of a doubt or fear or a mere conjecture when there are no facts known to the defendant upon which to base such doubt or fear does not constitute a valuable consideration. *Tucker* v. *Ronk,* 43 Iowa, 80; *Fitzgerald* v. *Fitzgerald & Mallory Const. Co.,* 44 Neb. 463, 62 N. W. 899; *Ware, Murphy & Co.* v. *Morgan & Duncan,* 67 Ala. 461.

It is further contended, however, by the respondent, that even admitting that to be so, the plaintiff has a complete and adequate remedy at law, either as a defense against any action that might be brought upon the bond or in any proceedings instituted by her to recover the moneys deposited with the Trust Company. So far as this demurrer is concerned, the question whether this is a proceeding in equity or a proceeding in law is immaterial. We have but one form of action in this state. Under our Constitution law and equity may be administered in the same action. In answering a contention similar to the one made by respondent, the Supreme Court of Missouri, in *Sauter* v. *Leveridge,* 103 Mo. 622, 15 S. W. 982, says:

"We have but one form of action in this state for all causes, whether formerly of common-law or equitable cognizance, and one court of general jurisdiction to try them. All that is necessary for the petition to contain is 'a plain and concise statement of the facts constituting a cause of action,' with a demand for the relief which the plaintiff supposes himself entitled to. From this the court determines the mode of trial, whether as an action at law or in equity. * * *"

However, that is not an open question in this state. It has been determined in two opinions. In *Morgan* v. *Childs, Cole*

*& Co.*, 41 Utah, 564, 128 Pac. 522, this court, speaking through Mr. Justice Straup, says:

"It is seen that the motion was granted and the action dismissed, not on the ground of insufficiency of evidence, but on the ground of a mistaken remedy. We think the trial court erred. In this, as in many other states in which the formal distinctions between actions at law and suits in equity are abolished, the court may administer relief according to the nature of the cause set out, whether it is such as would be granted in equity or such as would be given at law. 3 Cyc. 737. Our Constitution (section 19, art. 8) expressly provides that 'there shall be but one form of civil action, and law and equity may be administered in the same action.' *Volker-Scowcroft Lumber Co.* v. *Vance*, 36 Utah, 348, 103 Pac. 970, 24 L. R. A. (N. S.) 321, Ann. Cas. 1912A, 124."

That holding was later approved in *Mills* v. *Gray*, 50 Utah, 224, 167 Pac. 359, where the court, speaking through Mr. Chief Justice Frick says:

"The party therefore is not entitled to have an action dismissed merely because the relief his adversary is entitled to may be equitable rather than legal."

It is also insisted that the plaintiff cannot rescind or ask for a rescission of the bond without first restoring to the defendant Insurance Company whatever she has received. That well-recognized principle need not be considered, as it is not applicable when, as in this case, if the plaintiff is entitled to recover, she would receive and be entitled to retain the very thing in controversy. The rule seems to be well established that any one asking for a rescission of contract is not required to restore that which in any event he would be entitled to retain either by virtue of the contract sought to be set aside or of the original liability. 6 Cyc. 311; 2 Pomeroy's Equitable Remedies, section 687.

It is further contended by the Insurance Company, as I understand it, that the bond must remain intact and in force for such length of time as to make it impossible for any one to have a legal claim against it, that is, as stated in respondent's brief, until the statute of limitations has run. Just what length of time might be required to bar all imaginary claims is not pointed out, or attempted to be pointed out, in respondent's brief. It will be remembered that the bond of indemnity

is not only given to protect the Insurance Company against the claim of Dr. Jacobs or Mr. Bender, but against "all other persons." Thus, I assume, that if there was some minor heir of the deceased the Insurance Company could rightfully claim that the bond be kept in force until a child two years old shall have reached its majority and for such length of time thereafter as the statute permits it to make a claim for any property to which it might have been entitled as an heir.

Assuming, as we must, that the allegations of the complaint are true, and also having determined under the allegations contained therein that there was no consideration for the bond, and that the only possible justification for requiring the bond on the part of the Insurance Company was a mere conjecture or fear of some future litigation, based upon no facts known to defendant at the time, which could be the basis for any successful claim, and accepting also the allegations that before the plaintiff could procure the money she found it necessary to deposit with the defendant Trust Company the sum of $800 to indemnify that company against any possible loss, and that the Insurance Company refuses to cancel the bond, and that the Trust Company, rightfully as we think, declines to pay the money until it is released from its surety, can a court of equity grant relief? This money was given to plaintiff in trust for the support of the deceased's mother. It also appears from the record that deceased was a married man, and from these facts we have a right to assume that his mother was no longer a young woman, and, if this money is to be kept tied up at the mere pleasure or whim of the Insurance Company without any consideration for the execution of the indemnity bond under which it is held, it is a moral certainty that the efforts of the deceased to provide for the comforts of his mother in her old age would be defeated, and the only excuse for such miscarriage of justice, and for the failure to carry into effect the wish of the deceased, would be founded upon a contract based on mere conjecture with no legal basis for its existence. It seems to the members of this court that such a condition is intolerable and calls for the action of a court of equity to relieve the parties from such an uncon-

scionable, unnecessary, and useless situation. That the defendant Trust Company would have a right to insist upon being relieved from the obligation assumed by it when it received the deposit is within its rights, and ordinary justice would so hold; but to determine that a court of equity cannot give relief in a case such as this would, in our opinion, "be derogatory to courts of equity ·and justice if they could not and did not lend relief." True, a court of equity will not inquire into the quantum of the consideration. If there was a partial consideration, the court should not inquire as to whether the parties had made an advantageous or disadvantageous contract or bargain. But under the facts as disclosed by the complaint, either the plaintiff in this case is a fit subject for the appointment of a guardian to manage her affairs, or she was mistaken as to her rights, and to that extent at least was grossly imposed upon. A decree canceling the bond cannot by any possibility work any hardship upon the defendant Insurance Company or deprive it of any property or security to which it was originally, or at this time is, legally entitled; but to leave the parties as they are is depriving the plaintiff of a substantial right.

"Nor does the fact that there is a remedy at law oust the court of its equitable jurisdiction. That remedy must also be speedy, adequate, and efficacious to the end in view, or otherwise equity will entertain the plea of the suitor." *Swan* v. *Balbot*, 152 Cal. 145, 94 Pac. 239, 17 L. R. A. (N. S.) 1069.

We do not commend the complaint in this action as a model pleading, still we are clearly of the opinion that there are sufficient facts alleged therein to entitle plaintiff to relief, and that the same states a cause of action. The court sustained the defendant Insurance Company's motion to strike out certain parts of different paragraphs of the amended complaint as being conclusions of law, irrelevant, etc. We do not feel called upon to pass upon those numerous questions, but we are satisfied that, after striking out such parts of the complaint as are conclusions of law or irrelevant, there are enough facts left to have required the defendants to answer, and that the court erred in sustaining the demurrers to the complaint.

The bond given to the Insurance Company is set out in full in the amended complaint. It appears on the face of the bond that the consideration or excuse for requiring it was the notice served upon the Insurance Company by Dr. Jacobs and a Mr. Bender. Having found that that constituted no consideration for the bond, it would seem, after issues are made up, that unless the defendant has some additional defense not appearing upon the face of the bond it would be the duty of the court to enter judgment in favor of the plaintiff.

It follows that the cause must be reversed, and the case remanded, with instructions to overrule the demurrers and reinstate the case. Appellant to recover cost against respondent Insurance Company.

FRICK, C. J., and McCARTY, CORFMAN, and THURMAN, JJ., concur.