**KARTCHNER et al. v. HORNE et al.**

No. 7911.

Supreme Court of Utah.

Oct. 30, 1953.

Skeen, Thurman & Worsley, Verl C. Ritchie, Earl D. Tanner, Salt Lake City, for appellants.

J. R. Mulliner, Mulliner, Prince & Mulliner, Irwin Arnovitz, Salt Lake City, for respondents.

McDONOUGH, Justice.

This is an action to rescind a transaction wherein plaintiffs became shareholders of defendant corporation. Defendants Horne and Sorensen signed plaintiffs' stock certificate as officers of the corporation. Plaintiffs allege that the individual defendants made fraudulent representations as to the validity of the stock when the stock was void as an issue beyond the amount authorized in the corporate charter. The trial court found that there were no misrepresentations and that the issue of the stock was valid. Plaintiffs appeal.

The undisputed facts of this case are as follows: The defendant corporation was formed in 1947 for the purpose of bottling and merchandising soft drinks. When the corporation was formed, 200,000 shares of common stock were authorized and issued.

Ownership of the entire stock was in members of defendant Horne's family with the exception of 10,000 shares owned by Mrs. Stanis.

Frederick Sorensen (defendant)....101,000
Winders ...................... 48,000
Hornes (Defendant and wife)...... 41,000
Stanis ...................... 10,000
                              200,000

In the summer of 1949, Dr. and Mrs. Horne, having advanced $19,000 to the company, advised their son-in-law, Frederick Sorensen, who was managing the enterprise, that they wanted to return their stock and forgive the company its debt to them and suggested that he find someone to come into business with him. When Sorensen notified Dr. Horne that plaintiffs had agreed to purchase 100,000 shares of the stock, Dr. Horne wrote a letter resigning as an officer, endorsed his stock certificate and with Sorensen's certificate, which he held for safekeeping, mailed them to the corporation. This was on October 31, 1949. On November 1, 1949, a certificate for 100,000 shares was issued to plaintiffs, with Dr. Horne signing as president of the corporation. On November 2, plaintiff A. C. Kartchner undertook duties as Secretary and Treasurer of the corporation and Mrs. Kartchner was named a director. In July, 1950, the company was put into receivership and just prior to that time it was learned that the Kartchners claimed that their stock was void as an overissue.

▇ Plaintiffs contend that the court erred in certain findings of fact. The rule is well established in this jurisdiction that in an equity case findings of the trial court on conflicting evidence will not be set aside unless it manifestly appears that the court has misapplied proven facts or made findings clearly against the weight of the evidence. Stanley v. Stanley, 97 Utah 520, 94 P.2d 465; Olivero v. Eleganti, 61 Utah 475, 214 P. 313; Holman v. Christensen, 73 Utah 389, 274 P. 457. Inter alia, appellant objects to the lower court's finding that Dr. Horne and Sorensen transmitted their stock certificates to the office of the corporation endorsed in blank, so that at the time of issuance of plaintiffs' stock there were available for reissue 142,000 shares of common stock. There is no dispute as to Dr. Horne's endorsing his stock certificate and mailing it with the Sorensen certificate to the corporation office on October 31. The question appears then to be whether Sorensen had endorsed and delivered his stock to become treasury stock at sometime on November 1 before the Kartchner stock was issued, as required by U.C.A.1953, 16–3–1 to make a valid transfer of stock to the corporation.

The Sorensen certificate for 101,000 was endorsed in blank when received in evidence from the company files. By undisputed evidence, it was not endorsed when mailed by Dr. Horne on October 31. Whether or not it was endorsed before the issuance of stock to the Kartchners, there is no direct evidence. Conflict arises as a result of attempted impeachment by deposition of witnesses Sorensen and Horne and, considering

the whole record, is easily attributable to semantic difficulties. The trial court, able to observe the demeanor of the witnesses, was in a much better position than this court to determine the intended meaning of their words. Sorensen testified that he could not remember at what time he made the endorsement but that the stock was surrendered to the corporation on November 1 and that after that date he considered himself a minority stockholder of 42,000 shares, although a certificate for that amount was never issued to him. The reason for the delay, he testified, was that he hoped to obtain the other outstanding stock so as to make him equal in his holdings to Kartchner. No one has ever questioned the rights of the Kartchners to 100,000 shares of stock. Under these circumstances and the evidence that both Kartchner and Sorensen were aware of the facts that only 200,000 shares of stock were authorized, that they knew some stock would have to be surrendered in order for each to receive one-half interest, and that Kartchner subsequently held a position responsible for the books of the company, it is our view that the findings of the trial court must be upheld in the instance. At least there is some evidence that it was the intent of all parties both at the time of issuance of the controversial stock and at all succeeding dates that Sorensen become a shareholder for the amount only which could be recovered after he had relinquished his former holdings; there is no evidence to the contrary.

Appellants argue that their case was prima facie made out by the mere showing that all authorized stock had been issued and that then the burden of proof shifted to respondents to show that some of the stock was afterward surrendered to provide for a valid reissue. 5 Thompson on Corporations § 3557. As explained in 5 Wigmore on Evidence § 2483 ff., burden of proof is used in two significances: first, as the risk of non-persuasion, and second, as the duty of producing evidence. The party having the risk of non-persuasion is naturally the one upon whom first falls this duty of going forward with the evidence. Upon meeting their duty of going forward with evidence that all authorized stock had been issued before the issuance of plaintiffs' stock certificate, plaintiffs made out a prima facie case. Thereupon, the burden, in the second meaning of the phrase, shifted to the defendants, but the risk of non-persuasion, which never shifts, remained with plaintiffs. Wigmore § 2489. Defendants produced evidence (namely, that the Sorensen stock was with cancelled stock of the corporation at the time of trial and Sorensen's testimony that his stock was surrendered for the purpose of the reissue and that there had been no subsequent reissues) to meet the duty of going forward. Thus, the shifting burden again devolved upon plaintiffs to produce evidence that the stock was not surrendered, that is, endorsed and delivered, *before* the reissue of that stock. There is a presumption that official duties are regularly performed and that proceedings are regular,

Wigmore § 2534, which has been applied in this jurisdiction to official acts of a corporation and its directors. Singer v. Salt Lake City Copper Manufacturing Co., 17 Utah 143, 53 P. 1024. Thus, in absence of evidence to the contrary, the corporation is presumed to have accepted the stock for reissue at some time before reissuing it. Plaintiffs did not offer evidence to rebut this presumption; hence, the finding of the trial court that the surrender took place before the reissuance will be upheld.

Appellants contend that Dr. Horne's testimony that Sorensen told him that he had not received Dr. Horne's resignation (and hence neither the Horne nor Sorensen stock) at the time he asked Dr. Horne to sign the Kartchner certificate is conclusive evidence that there was an overissue. However, Dr. Horne's signature on the certificate was not an "issuance" of the stock but merely one of the acts necessary to providing for the issuance. Thus, the certificates may have been surrendered to the corporation prior to the act of delivery, completing the issuance of stock, to the Kartchners.

Another part of appellants' case concerns the validity of the stock certificate issued November 1, under the question of the effect of Dr. Horne's resignation as president and the return of his stock dated October 31. The question of when the resignation became effective need not be determined here, inasmuch as Dr. Horne, at the time of signing the Kartchner certificate was at least de facto president with power to bind the corporation by his act, even though he was not qualified to hold office since he no longer held stock in the corporation. U.C.A.1953, 16–2–21.

It is well settled that the acts of de facto officers of a private corporation are binding as to a third person who deals with them in ignorance of their want of legal right to the office. It is likewise the rule that the acts of directors de facto of a corporation are valid as to third persons. 13 Am.Jur., Corporations, § 877.

The facts that Dr. Horne was regularly elected to office, took oath of office, entered upon the discharge of his official duties and was recognized as having the power to sign as president, both by appellants and other stockholders, are sufficient to make him a de facto officer. Watson v. Johnson, 174 Wash. 12, 24 P.2d 592, 89 A.L.R. 1527; Godfrey L. Cabot, Inc., v. Gas Products Co., 93 Mont. 497, 19 P.2d 878. The fact that he was not a stockholder as prescribed by law, U.C.A.1953, 16–2–21, would not prevent his being a de facto director nor render invalid his actions for the corporation. Jones v. Bonanza Mining & Milling Co., 32 Utah 440, 91 P. 273; McKeehan v. Pacific Finance Corp., 120 Cal.App. 578, 8 P.2d 213. In these two cases, the director was not qualified by financial investment in the company at the time of election and hence could not have become a de jure officer in the first instance; yet his acts for the corporation were valid. There would indeed seem to be greater reason for validating the acts of a director or president who is subsequently disqualified as a de jure officer but continues

to act for the corporation in the interim of his resignation and the election of a new officer before his resignation is published.

Thus, because the stock certificate when issued was valid under the findings of the trial court, and all misrepresentations on the part of individual defendants claimed by appellants relate to the representation that the stock certificate was valid, appellants' other points need not be considered. The judgment of the lower court is affirmed. Costs to respondents.

WOLFE, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.