300 P.2d 623

Rex L. COLE and Helga S. Cole, Plaintiffs and Appellants,

v.

Frank J. PARKER, Lizzie Parker, Harold V. Parker and Juanita Parker, Defendants and Respondents.

No. 8340.

Supreme Court of Utah.

Aug. 3, 1956.

Rawlings, Wallace, Roberts & Black, Salt Lake City, Utah, for appellants.

R. R. Brady and Dean E. Flanders, Salt Lake City, for respondents.

McDONOUGH, Chief Justice.

Plaintiffs entered into a uniform real estate contract with defendants to purchase ranch property in Millard County, Utah, in August, 1952, for a total price of $40,000, to be paid in installments. They moved onto the ranch in September and stayed for two or three months and then moved off because, they alleged, no water was available. They returned the following spring, 1953, and determined that the place could not be farmed because of lack of water, and hence, the land was not cultivated during that summer. In December, 1953, the plaintiffs brought action to rescind the contract and recover the $11,600 paid prior to that time on the contract, alleging that the defendant, Harold Parker, fraudulently induced the contract by representing falsely that there was an adequate supply of water on the premises for agriculture and pasture. Defendants denied the fraud and counterclaimed to have the court declare the contract cancelled and the money paid forfeited. The trial court ruled in favor of defendants and forfeited the $11,600 paid on the contract by the plaintiffs.

All parties agree that irrigation is essential to the value of the land in that area and that the water supply must come from nearby mountains through Hendrie's Creek. Much of the water is lost in a fault or in gravel between the mountains and the valley where the ranch is situated, but apparently enough water was available in the year of 1952, when plaintiffs first observed it, to raise a crop of corn, oats, alfalfa, wheat and barley, totalling cultivated acreage of at least one hundred thirty-five acres, and four orchards. Admittedly, the year 1952 provided a better than average supply of water to this area and, unfortunately for Mr. Cole, the following year provided less than normal. During the time of the pendency of this suit, a receiver was appointed for the ranch and the land was cultivated and irrigated in 1954.

Mr. Cole, at the time he was considering the purchase of the ranch, was taken by Mr. Parker to see the source of the water in the mountains. He testified that he was taken by "a roundabout way" and hence was not given the opportunity to see where the water was lost and was told by Mr. Parker that the creek always contained the amount of water then flowing in it, approximately four or five second feet. The defendant, Harold Parker, denies that he attempted to conceal the fault and denies that he made the statement attributed to him. He admits that there was a discussion of the water, as testified by other witnesses, including a suggestion that if the creek were lined a portion of its course it would deliver more water to the ranch. It appears that plaintiffs paid considerably more than the expert's appraisal of the value of the property, but it also appears that the ranch had for six years previous supported two families, consisting of

twelve people. The defendant, Harold Parker, testified that he filed tax returns and paid taxes on an amount averaging $1,200 per year although he claimed standard deductions for his eight children; or, that the net income from his portion of the property was $7,200 per year. There is no evidence as to the net income from the portion occupied by his parents, the other defendants here.

The plaintiffs claim that under these circumstances, the trial court committed error in finding that there was no fraud on the part of the defendants. They urge that defendants were obligated to reveal all of the circumstances concerning the loss of water before it reached the ranch, inasmuch as the water was at its highest at the time of inspection and the value of the land was dependent upon the availability of water.

 While we agree with plaintiffs' cited authorities that a material nondisclosure or a half-truth may be the basis for an action on fraud as well as a positive representation, A.L.I. Restatement of the Law of Torts, sec. 529, we do not agree that because the seller did not discuss with particularity the cause of the loss of water, the buyer is at liberty to rescind his contract. In the case of Lewis v. White, 2 Utah 2d 101, 269 P.2d 865, 866, where there was an assertion that the property produced an income of $1,000 per month, whereas the actual income was $225 per month, it was held that the question of reasonable reliance upon the representations was a question of fact to be determined by the jury. The court therein stated:

"No matter how naive or inexperienced the defendants were, they could not close their eyes and accept unquestioningly any representations made to them. It was their duty to make such investigation and inquiry as reasonable care under the circumstances would dictate; whether this required them to make further inquiry concerning the income, and if so, the extent thereof was for the jury to determine."

 The present case was tried to the court, sitting without a jury. The inferences arising from the evidence were in serious conflict. True, there were expert opinions that the value of the property at the time of purchase was not the $40,000 paid and that it could not be rented to a "good operator" at any price. On the other hand, the court had before it evidence that the farm had been producing sufficient income to support a large family for six years. Mr. Cole obviously did not apply the industry nor did he have the background in farming which had enabled the Parkers to live off the land. Indeed, it appears that Mr. Cole's major efforts during the time he occupied the ranch were directed toward reaping the harvest of crops which had been sown and nurtured by the

Parkers during the year of 1952. According to plaintiffs' expert, a real estate salesman, the property would not have been worth over $15,000 if the water had been as plentiful every year as it was when plaintiff viewed it. Thus it would appear that rather than being deluded by the fact that water was flowing in the creek at the time of his purchase, Mr. Cole was laboring under a misapprehension as to land values or his own ability to make a success of a farm when he entered into the transaction. He spent no time obtaining independent advice as to the value of the farm and, even though he was told by the seller that there was a water loss between the source of the creek and the ranch, he did not investigate how much loss occurred nor the cost of preventing the loss. Under these circumstances, the trial court made the finding that there was no fraud involved and such a determination, upon conflicting evidence, will not be set aside unless it manifestly appears that the court has misapplied proven facts or made findings clearly against the weight of evidence. Kartchner v. Horne, 1 Utah 2d 112, 262 P.2d 749.

Plaintiffs further contend that the trial court erred in forfeiting the $11,600 paid on the contract by them. It is their view that the amount of money paid for their possession, which lasted only a year and three months, is excessive and must be construed as a penalty rather than liquidated damages under the policies expressed by this court in Malmberg v. Baugh, 62 Utah 331, 218 P. 975; Croft v. Jensen, 86 Utah 13, 40 P.2d 198; Young v. Hansen, 117 Utah 591, 218 P.2d 666; Perkins v. Spencer, Utah, 243 P.2d 446. See also, "Forfeitures Under Real Estate Installment Contracts in Utah" by Brigitte M. Bodenheimer, 3 Utah Law Review, 30.

The criteria for determining whether a provision in a contract amounts to a penalty or a fair estimate of damages sustained by the vendor upon a breach of the contract was outlined in the case of Perkins v. Spencer, supra. It is there stated that at the time of the forfeiture, the court will consider the following elements in approximating the damage suffered by the vendor:

"1. Loss of an advantageous bargain;

"2. Any damage to or depreciation of the property;

"3. Any decline in value due to change in market value of the property not allowed in items Nos. 1 and 2;

"4. For the fair rental value during the period of occupancy."

Plaintiffs received, and defendants were therefore deprived, of certain sums by virtue of the contract—i. e., through sales of farm produce; but plaintiffs pose the question whether Item 1 covers in its scope situations such as the present one where the buyer agreed to pay double the value

of the real estate. If it does, then the amount paid by appellants may be considered as compensation to the seller for the loss of his bargain.

■■ Except under special circumstances, no fiduciary obligations exist between a buyer and seller of any property, Dyke v. Zaiser, 80 Cal.App.2d 639, 182 P.2d 344, and the present case furnishes no indication of any confidential relationship whatsoever and indicates that the parties were competent to contract and did deal at arms length. Under such circumstances, it has been stated many times that the court will not inquire into the adequacy of consideration if it is legally sufficient, O'Neill v. Mutual Life Ins. Co., 51 Utah 592, 172 P. 306; Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407; Seth v. Lew Hing, 125 Cal.App. 729, 14 P.2d 537, 15 P.2d 190. Appellants refer to the contract into which they entered as "unconscionable" and cite cases where such contracts were avoided, but in each of them, evidence revealed a fiduciary relationship, Howells v. Pacific States Savings, Loan and Bldg. Co., 21 Utah 45, 60 P. 1025, incompetency of one of the bargaining parties, or some other indication of actual fraud. See Annotation 15 Am.Dec. 572. In the absence of fraud or imposition, the parties are bound by the price or measure of value they have agreed on, and such price must be paid notwithstanding it may be excessive. The courts cannot supervise decisions made in the business world and grant relief when the bargain proves improvident.

■ Thus, in the absence of a finding of fraud, the seller is entitled to be credited, in the computation of damage sustained because of the breach of the contract, the difference between the contract price and the price for which he can sell the forfeited property. The fact that, according to plaintiffs' evidence, this amount exceeds the amount paid on the contract forecloses further inquiry as to whether or not the forfeiture provision of the contract properly assessed the actual damages suffered by the defendants.

Affirmed. Costs to respondents.

CROCKETT and WADE, JJ., concur.

WORTHEN, Justice (concurring in the results).

I concur in the results reached by Chief Justice McDONOUGH.

In this case appellants were not being imposed on by respondents. Appellants sought to get out of their bargain and to do so entirely at respondents' expense.

I am in general agreement with the doctrine that equity should give protection to a defaulting purchaser whose default is neither wilful nor deliberate against a grasping vendor who is waiting to spring the moment the vendee defaults in the slightest manner, and who seeks not the purchase

money due him but the property sold plus enormous amounts in addition.

I, however, believe that the same equitable tolerance is not demanded or even proper when we have facts such as those in this case and such as were present in the case of Perkins v. Spencer.[1]

Here we have purchasers who sought to pull out of their bargain who charged fraud and misrepresentation, and who sought long after having gone into possession to have the contract set aside.

The trial court in its finding of fact No. 12 found:

"That on the 1st day of December, 1953, the plaintiffs elected to rescind the said uniform real estate contract and notified the defendants in writing that they had rescinded said contract * * *."

When a vendor has received substantial amounts as down payment and installments and the vendee has defaulted—but has not rescinded the contract—and the vendor seeks to take back the property in a summary manner and also to retain amounts which often constitute a substantial portion, if not most, of the purchase price,[2] equity may well and generally should afford some relief to the vendee. But when the vendee charges the vendor with fraud and sharp

practice and rescinds the agreement, he should not be the recipient of equity's bounty, but should, if he fails to establish the fraud, be held to have rescinded his contract and receive no assistance to recover back part of what he has paid.

Adopting a position such as was taken by this court in the case of Perkins v. Spencer, supra, argues strongly against selling under a uniform real estate contract. The vendor in such a contract has not only the vendee as the other party but the court as an interested second to the vendee.

If the vendor in this case and the Perkins case had taken a mortgage for the amount remaining after the down payment and had foreclosed because of the vendee's failure to pay, we would not interfere because the vendor got the property at sheriff's sale and still kept the payment made or even took a deficiency judgment in addition thereto.

Had the defendants here and in the Perkins case sued and taken a judgment for the past due payments called for in the agreement and asked that the property be impressed with a lien for the same, we would probably be obliged to permit the vendee to suffer further losses.

In my opinion this case does not fall within the class of cases such as Malmberg v. Baugh,[3] and other cases where relief was

1. Utah, 243 P.2d 446.
2. Croft v. Jensen, 86 Utah 13, 40 P.2d 198, where vendee paid $6,300 on a $6,500 contract.

3. 62 Utah 331, 218 P. 975.

270

granted the vendee who had not repudiated and rescinded his contract, although in my opinion the entire line of such cases should be reexamined with a view of either prohibiting any provision for forfeiture or establishing a rationale in such cases that is more dependable than the whim of the judge attempting to make a new contract for the parties as to reimbursement of the seller because of the buyer's breach.

HENRIOD, J., agrees with the conclusion reached in the main opinion and also with the reasoning of WORTHEN'S, J., concurring opinion.