Jo Dee **PETERSON**, Plaintiff-Appellant,

v.

**KOCH INDUSTRIES, INC.**, and W. A. Moncrief, d/b/a Moncrief Oil, Defendants-Appellees.

No. 81–1826.

United States Court of Appeals, Tenth Circuit.

July 15, 1982.

Anthony M. Thurber, Salt Lake City, Utah, for plaintiff-appellant.

Clark R. Nielsen and John K. Mangum of Nielsen & Senior, Salt Lake City, Utah, for defendants-appellees.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Jo Dee Peterson (Peterson) appeals from an order granting partial summary judgment and dismissal of her amended complaint, and the court's final order granting judgment on the counterclaim of Koch Industries, Inc. (Koch) and W. A. Moncrief d/b/a Moncrief Oil (Moncrief).[1] A detailed recitation of the facts will facilitate our review.

At all times pertinent, Peterson resided in the State of California. In 1978 Peterson, then 17 years of age, owned an undivided 2.15% fractional mineral interest in 120 acres located in Sections 9 and 10, T 4 S, R 6 W, Duchesne County, Utah. Peterson acquired the interest in 1965 as a devisee of the estate of her deceased mother.

1. Koch and Moncrief will hereinafter be collec-    tively referred to as "appellees".

In May, 1978, Peterson and her father were contacted by Randy Coleman (Coleman), a land man for Koch, relative to Koch's leasing her mineral interest for oil and gas exploration and development. In conjunction therewith, Coleman mailed Peterson a lease on May 10, 1978, accompanied with a bonus payment of $303.57. In his letter of transmittal, Coleman indicated that if the proposed lease was acceptable, it was to be signed by Peterson and her father and returned to him. On August 19, 1978, Peterson and her father (who executed as natural guardian) executed the proffered lease and returned it to Coleman. Under the lease Peterson was to receive a 16.667% royalty interest of the production accruable to her 2.15% undivided mineral interest. The lease entitled Koch to pool any or all of the lands under lease into a separate operating unit, or units, if such was necessary, in its judgment, to properly develop or operate the land and interests to be pooled.

On October 1, 1978, a communitization order was entered by the Utah State Division Court of Oil, Gas and Mining for Sections 9 and 10. Under this order, each section was pooled for unit development. Moncrief was designated as the unit operator and it proceeded with exploration and development.

Drilling commenced in Section 10 on September 4, 1978 (Reiman 10–1 Well). Reiman 10–1 went into production on November 8, 1978. Drilling commenced in Section 9 on September 25, 1978 (Bates 9–1 Well). Bates 9–1 went into production on November 15, 1978. These two wells, both drilled by Moncrief, were the only producing wells in the two section units. Neither well was drilled on Peterson's land.

On November 21, 1978, Coleman sent Peterson a letter containing a "ratification and rental division order" which stated:

Dear Jo Dee:

Enclosed is a Ratification and Rental Division Order, in duplicate, in connection with the oil and gas lease you and your father executed this past August. Since you have attained your majority in accordance with Utah state law, you should ratify the lease as a major.

Please sign the ratifications before a notary public, have the acknowledgement [sic] on the reverse side completed and sealed and return one copy in the enclosed envelope.

Happy Birthday!

[R., Vol. I at p. 8].

On December 5, 1978, Peterson executed the ratification and division order and returned it to Koch. Peterson did not inquire as to the progress of the drilling, exploration, or of any production on the property prior to ratifying the lease. Conversely, Koch did not disclose that substantial production had been achieved in both sections.

On August 10, 1979, Koch sent Peterson a division order of the Bates 9–1 Well for her approval and execution. This order set forth specifically Peterson's royalty interest and those of the other lessees as the basis for distributing each party's respective royalty interests under lease. Peterson signed the division order on September 19, 1979.[2]

In accordance with the division order, Koch sent Peterson royalty payments on October 20, 1979 and November 5, 1979 for $664.00 and $90.00, respectively. Peterson held both checks until December 12, 1979, at which time Peterson's attorney returned the checks together with a check representing the bonus payment Peterson had accepted in 1978 and a copy of the complaint filed herein.

Within her original and amended complaints[3] Peterson alleged that at no time prior to December 5, 1978 did appellees apprise her of the drilling activities in Section 9 and 10 or that production had been realized; that her ratification of December 5, 1978 is voidable since it was induced by a "material mistake of fact and affirmative conduct in the nature of misrepresentation by silence regarding material facts on the part of defendant (appellees)"; that she has

---

**2.** Peterson has continually refused to sign a division order for Reiman 10–1.

**3.** Peterson's amended complaint added Moncrief as a party defendant.

elected to void the lease and ratification; and that upon voiding of the lease and ratification, the court should enter an order affording her a working interest in both wells as opposed to the ⅙ royalty interest amount set forth in the terms and conditions of the lease.

Within their answer, appellees alleged that Peterson's complaint failed to state a cause of action. Appellees also counterclaimed against Peterson seeking a declaratory judgment to the effect that they had acquired a valid lease from Peterson.

On February 19, 1981, the court entered an order granting appellees partial summary judgment and dismissing Peterson's second amended complaint:

> IT IS HEREBY ORDERED that:
>
> 1. Defendants' Motion for Partial Summary Judgment is granted and the claims in plaintiff's Second Amended Complaint seeking a declaration that the Oil and Gas Lease Agreement between plaintiff and defendant, Koch Industries, Inc., dated May 10, 1978, is null and void and a declaration that plaintiff is a working interest owner in the unit of which said leasehold is a part, are dismissed with prejudice.
>
> 2. In accordance with the stipulation of the parties and good cause appearing therefore [sic], the balance of the claims contained in plaintiff's Second Amended Complaint are dismissed with prejudice.
> [R., Vol. I at p. 110].

On July 9, 1981 the court entered an order granting appellees judgment on their counterclaim:

> Based upon the foregoing Stipulation of the parties and based upon this court's Memorandum Decision entered herein on February 10, 1981, and this court's order dated February 19, 1981, granting partial summary judgment and dismissing plaintiff's Second Amended Complaint and good cause appearing therefore [sic], now, therefore,
>
> IT IS HEREBY ORDERED as follows:
>
> 1. Judgment is entered in favor of defendants and against plaintiff on the defendants' counterclaim and the oil and gas lease entered into by plaintiff on or about August 19, 1978, is declared a valid and existing lease vesting in Koch Industries, Inc. the right to operate the leasehold described therein for the production of oil, gas and other hydrocarbons subject to the terms and conditions of that lease.
>
> 2. Each party shall bear its own costs. [R., Vol. I at p. 118].

■ On appeal Peterson contends the court erred in ruling that under the laws of Utah there was no duty owing by appellees to volunteer information regarding oil and gas production at the time Koch solicited her ratification of the oil and gas lease executed during her minority.

Peterson has failed to set forth any specific authority supportive of her allegation that appellees were obligated under the laws of Utah to volunteer information relative to oil and gas production at the time they solicited and obtained her ratification of the lease executed during her minority. Our independent research has also failed to elicit any authority supportive of Peterson's position. Rather, we conclude that the general law of oil and gas leasing and the specific contract law of Utah support the trial court's judgment.

4 Summers Oil and Gas § 662 at pp. 148–149 (1962) contains this discussion of the lack of any specific duty upon a lessee to disclose:

> There is no authority, and there appears to be no sound reason for holding that a prospective purchaser or lessee of oil or gas lands should be under any duty to disclose his knowledge of the mineral quality of the land gained by geophysical methods of testing when he does not have that duty, if the information is acquired by other superior and scientific acquirements. . . . He [lessee] has simply through his superior knowledge of the laws of physical matter been able to learn something as to the mineral quality of the lessor's land which he is under no duty to divulge to the lessor. . . . The superior scientific knowledge and skill which enables a prospective lessee of min-

eral lands to acquire information about their mineral qualities by geophysical methods is no different in principle than any other type of superior knowledge whereby a prospective purchaser is enabled to judge the soundness of a horse, the genuineness of a picture, or the quality of a diamond. "A purchaser is not by our laws bound to make the man he buys from as wise as himself." As long as the parties deal at arm's length there is no duty on part of the oil lessee to disclose information gained by geophysical tests. Of course, if there is an active misrepresentation in addition to nondisclosure, or a contractual or fiduciary relationship creating a duty to disclose, the contract may be held fraudulent. If such a test is made for the prospective lessor, there is a duty to disclose created by contract. If the lessee is asked if he has tested the land, or knows of the existence of oil and gas structure, he may remain silent, but if he undertakes to answer, he must tell the truth.

[Footnote omitted].

The developing case law of Utah has adopted a similar position.

■ A party must exercise such degree of care as would be exercised by an ordinary, reasonable, and prudent person under the circumstances and is, accordingly, precluded from holding someone else to account for the consequences of his own neglect. *Jardine v. Brunswick Corporation*, 18 Utah 2d 378, 423 P.2d 659 (1967). When a party, such as Peterson, is asserting fraudulent or improper conduct on the part of another, she must also establish that she acted reasonably under the circumstances. *Cheever v. Schramm*, 577 P.2d 951 (Utah 1978).

As set forth, *supra*, Peterson failed to inquire about exploration or drilling activity or whether production had been achieved, even though Peterson had been apprised that Koch was actively leasing the property in and about her own interests. Under these circumstances, it is our view that Peterson was obligated to make, at a minimum, a few general inquiries:

Knowledge which is sufficient to lead a prudent person to inquire about the matter when it could have been ascertained conveniently, constitutes notice of whatever the inquiry would have disclosed, and will be regarded as knowledge of the facts. *Columbian Nat'l Life Ins. Co. v. Rodgers* [10th Cir.] 116 F.2d 705. And, Utah courts have said that "A party who has opportunity of knowing the facts constituting the alleged fraud cannot be inactive and afterwards allege a want of knowledge that arose by reason of. his own laches and negligence." *Taylor v. Moore*, 87 Utah 493, 51 P.2d 222, 229. [*Migliaccio v. Continental Mining & Milling Co.*, 196 F.2d 398 (10th Cir. 1952) at p. 403].

■ Nor are we persuaded by Peterson's underlying argument that since the lease was executed during her minority, appellees, *ipso facto*, had a broader duty to disclose. Contrary to Peterson's assertion, the execution of the lease during her minority did not give rise to a fiduciary or quasi-fiduciary relationship between herself and appellees. A fiduciary relationship is not presumed in Utah. In *Cole v. Parker*, 5 Utah 2d 263, 300 P.2d 623 (1953) the court observed:

Except under special circumstances, no fiduciary obligations exist between a buyer and seller of any property, *Dyke v. Zaiser*, 80 Cal.App.2d 639, 182 P.2d 344, and the present case furnishes no indication of any confidential relationship whatsoever and indicates that the parties were competent to contract and did deal at arms length.

300 P.2d at p. 626.

*See also: Appleman v. Kansas-Nebraska Natural Gas Company*, 217 F.2d 843 (10th Cir. 1954).

■ Whereas silence may give rise to actionable fraud, such only occurs when a material matter is known to one party and he is bound to disclose. *Elder v. Clawson*, 14 Utah 2d 379, 384 P.2d 802 (1963). We hold that appellees were under no duty to disclose to Peterson that production had been achieved, particularly when, as here,

Peterson did not inquire and appellees' relationship with Peterson was at arm's length, outside the parameters of a fiduciary relationship. Furthermore, we observe that Peterson's execution of the August 10, 1979 division order, as distinguished from the ratification of the oil and gas lease proper, constitutes explicit acknowledgment that production had been realized on a portion of the communitized lands pooled for unit development of which Peterson's lands were included. Even though production had not been realized from Peterson's leasehold interest proper, she had explicit knowledge of production from other lands in the established units. Nevertheless, no inquiries about anticipated exploration, the existence of known geologic structures or tests undertaken relative to Peterson's lands leased to Koch were ever directed by Peterson to Koch.

AFFIRMED.